[S. F. No. 137.   In Bank.—August 19, 1896.]

IN THE MATTER OF THE ESTATE OF CHARLES LUX, DECEASED.

ESTATES OF DECEASED PERSONS—ALLOWANCE TO WIDOW—LARGE ESTATE— COMMUNITY PROPERTY—DISCRETION.—Where the estate of a deceased person is of the value of ten millions of dollars, and is free from debt or encumbrance, and is nearly all community property, so that the widow is practically paying one-half of the sum allowed for her support and maintenance, an allowance to her of two thousand five hundred dollars per month, which is shown to be in keeping with the scale of expenditures existing before the death of her husband, is not an abuse of discretion, and will not be disturbed upon appeal therefrom by collateral kindred of the deceased.

ID.—INDIVIDUAL PROPERTY OF WIDOW—DEVISE OF LIFE ESTATE—BEQUEST OF ANNUITY—LAW OF THE CASE. —In fixing the allowance to the widow pending administration, it is the law of the case, as determined upon a former appeal (In re Lux, 100 Cal. 193), that the court is not to consider a life estate in land devised by the deceased to the widow, nor an annuity bequeathed to her by his will, nor any property belonging to her individually in her own right, though it may be sufficient for her support.

ID.—DEATH OF WIDOW PENDING APPEAL — EFFECT UPON ALLOWANCE. — The death of a widow pending an appeal from an order making an allowance for her maintenance and support, does not affect her right to the unpaid allowance accrued at the time of her death, and, upon affirmance of the judgment, the amount unpaid at the time of her death goes to her heirs or personal representatives, though there can be no allowance for any time subsequent to her death.

APPEAL from an order of the Superior Court of San Mateo County making a monthly allowance to Miranda W. Lux, widow of Charles Lux, deceased, during the settlement of the estate.   GEORGE H. BUCK, Judge.

The facts are stated in the opinion of the court.

J. H. Campbell, and D. M. Delmas, for Appellant.

*Garber, Boalt & Bishop,* and *William Rix,* for Respondents.

McFARLAND, J.—This is an appeal by the next of kin—called generally the German heirs—of Charles Lux, deceased, from an order of the court sitting in probate, made March 22, 1894, allowing Miranda W. Lux, widow of the deceased, for her maintenance $2,500 per month from the thirtieth day of August, 1888, during the progress of the settlement of the estate; and we are asked to reverse the order, upon the grounds that the allowance was for too large an amount, and that she was not entitled to any allowance at all.

We will not discuss at length the question whether the court below abused its discretion by making an allowance for too much. The estate was found by the court and admitted by counsel to be of the value of $10,000,000; and it was free from debt or encumbrance. It was nearly all community property, accumulated by the joint efforts of the spouses, one-half of which would go after settlement to the widow; so that, practically, she herself would pay one-half of the allowance. The evidence shows that the amount allowed was in keeping with the scale of expenditures existing before the death of the husband. The proposition that under these circumstances, and as against collateral kin and strangers, the court below so abused its discretion in allowing the sum named, that this court for that reason should set aside the order, has no foundation whatever in the law or the evidence.

Appellants contend that the court below did not take into consideration certain things which it should have considered. The things which it is contended were not considered are these: The deceased owned one piece of separate property consisting of land known as the Buri-Buri rancho; and by his will he gave to his wife, the respondent, during her lifetime, the rents, profit, and income of said rancho, and provided that "all income and interest derived therefrom shall be her sole and sepa-

rate property"; the remainder after her death to go to certain named collateral heirs. Now, it appeared from the evidence,that in July, 1890, there was a partial distribution of the said Buri-Buri rancho, by which her said life estate therein was distributed to respondent, and the remainder to certain other persons; and, at that time, or immediately afterward, she sold her life estate for $110,000, the other persons, heirs or devisees, getting for their share, $370,000. She had also received some rents from said rancho before the sale. All (substantially) of the community property of the deceased and respondent consisted in a one-half interest in the firm of Miller & Lux, who owned immensely large properties in lands, cattle, etc; and by a written contract between the deceased and Miller it was covenanted that, upon the death of either partner, the survivor should continue to carry on the business for the joint use of himself and the estate, heirs, and legatees of the deceased for seven years, if necessary, after the death of the deceased partner; and, in his will, the deceased requested his wife to allow her share of the common property to remain under the care and control of the surviving partner, Miller. The respondent complied with this expressed wish of her deceased husband, and allowed all her share of the community property to remain in the business of said firm under the management of Miller; and the said money which she received from the sale of said rancho she immediately loaned to Miller, to be used in the firm business, although afterward she invested some of it in other property, and she received, although for what length of time does not appear, income from this money in the amount of $458 per month.

The will also gave her $500 per month " out of my estate" during her life, and his trustees were directed to " set apart so much of my estate as may be necessary to yield that sum for that purpose"; but no part of the estate was ever set apart for that purpose, and no part of said $500 per month was ever received by respondent.

There was also a provision in the said written con-

tract between Lux and Miller that so much of the "rents, issues, and profits, and proceeds of sales which may be necessary for the support of the family of the deceased" should be paid to such family; but such rents, profits, etc., were put by Miller into the business, and none paid to respondent.

And these items above mentioned — particularly money received from the Buri-Buri rancho and the said $500 — are the main matters which, it is contended, the court did not consider.

It does not clearly appear that the court did not consider these items. Findings were made by the court; but it can hardly be said that they affirmatively show that in arriving at the conclusion that $2,500 per month was a proper allowance, the court did not consider the said items. However, there is in the transcript an "opinion" of the judge of the court below, in which, referring to a former appeal, he said: "Upon the former hearing this court took into consideration, in arriving at its conclusion, certain matters which, upon said appeal, the supreme court held should not have been considered in fixing the family allowance, and, in the reversal of the order, indicated and pointed out the course this court should pursue in fixing the family allowance. At the first hearing, the value of the estate was fixed at $4,000,000, while now it is placed at $10,000,000. In view of the evidence presented, and under the decision of the supreme court, an allowance," etc. And it is contended that from this opinion it appears that the probate court erroneously construed the opinion of this court on the former appeal as holding that the said items should not be considered. But, in the first place, if this "opinion" of the court below can be considered at all, it does not carry on its face the meaning sought to be given it. It expressly refers to, and, apparently, rests largely on, the fact that at the first hearing the estate was supposed to be worth $4,000,000, while now it is shown to be worth $10,000,000. And, in the second place, if the court below construed the

decision of this court on the first appeal as contended, then it construed it correctly; for this court in that decision held that in fixing a proper allowance neither the Buri-Buri rancho nor said $500 mentioned in the will should be considered. The history of that appeal is, briefly, as follows: Charles Lux died in March, 1887. On May 4, 1887, upon the application of the widow (respondent there) the court made an order granting her $2,500 per month from the death of the deceased "until the return of the inventory, or until further order of the court." There was a difference of opinion as to when the "return of the inventory" legally took place, and, under the construction which the executors put upon said order, they continued to pay the respondent $2,500 per month until November 15, 1891. It was held afterward, however, that the inventory was legally returned on August 30, 1888. On March 17, 1892, the respondent filed a petition for an order to be made *nunc pro tunc* as of the date of the return of the inventory (which she then took to be May 16, 1890) allowing her $2,500 per month during the progress of the settlement of the estate; to which petition appellants herein filed written objections. Upon the hearing of the issues thus raised, the court, on May 13, 1892, made an order allowing her $1,000 per month from August 30, 1888, until November 15, 1891. From such order respondent herein took an appeal, and that is the appeal hereinbefore referred to. It is reported in volume 100 of California Reports, commencing at page 593, under title of *In re Lux.* The order was reversed with certain directions to the court below. It was held that the order of allowance should have embraced the entire period of the settlement of the estate; but the respondents there (appellants here) contended that, as the widow had received money from the Buri-Buri rancho amounting to $137,000, including rent and the sum for which her life estate therein had been sold, and had been given the $500 per month by the will, therefore she had sufficient means to support herself, and was not entitled to any

further allowance, and it was in response to this conten-
tion that this court made rulings which are the law of
the case. The evidence and facts were the same on
that hearing as on the second hearing, out of which this
present appeal arose, except as to the fact of the partial
distribution of the Buri-Buri rancho (which will be no-
ticed hereafter), and the further fact that, at the second
hearing the estate was shown to be vastly more valuable
than at the first hearing. The financial situation and
ability of the respondent was exactly the same at both
hearings. Then, as now, the money which she had re-
ceived from the said rancho, and the said provision of
the will, were before the court. And, under these cir-
cumstances, this court, on the former appeal, said: "The
court below found that the property set apart to the
widow is insufficient for her support, and also made
additional findings to the effect that the deceased in his
will bequeathed to her a legacy of $500 per month during
her life, and a life estate in certain property, from the
rents and sale of her interest in which she had received
$137,000, and that the deceased also provided in his
will, as well as by agreement with his partner, Miller,
that said Miller should pay to her monthly such sum as
might be needed for her support. It is claimed by re-
spondents that these findings show that the widow has
sufficient property of her own to support herself, and
that under such circumstances she was not entitled to
any allowance whatever from the estate, and, therefore,
she cannot be heard to complain because the order ap-
pealed from does not continue the allowance during the
administration of the estate; and in support of this prop-
osition it is argued that the object of the statute is 'to
meet the actual wants and necessities of the widow and
her family,' and that when, as in this case, the widow
is childless and has abundant private means of her own,
there are no wants or necessities to relieve, and the law
does not contemplate that any allowance shall be made
for her support. But however the rule may be in other
states, and there are decisions which seem to support

this contention of respondents, we do not think section 1466 of the Code of Civil Procedure can be so construed. Its language is express and mandatory, and, in the language of the counsel for appellant, 'the duty of maintaining the family, which the law imposes upon the deceased husband or father in his lifetime, is continued against his estate pending its administration,' if the estate is not insolvent. It declares that the court must make a reasonable allowance out of the estate if the property set apart to the family is insufficient for their support; and for the court to hold that no allowance shall be made to the widow if she has sufficient property of her own, although the property set apart to her is insufficient of itself for her support, would be, in effect, an amendment of the law by judicial construction. There was nothing actually decided in *Estate of Walkerley*, 77 Cal. 643, in conflict with this conclusion, although it may be conceded that there are expressions in the opinion which, considered apart from the facts before the court, lend some support to the argument of respondents to this point." And the court concluded its decision as follows: "The order appealed from will be reversed, and the superior court will, upon the evidence already before it, and such further evidence as the parties may desire to present, make an order for an allowance to the widow, to continue during the progress of the settlement of the estate, and in such amount as it shall deem reasonable, and without regard to the fact that she may have separate property sufficient for her support. Order reversed." This language can receive no other construction than that the court below was to allow her a proper support out of the general estate, notwithstanding the special gift in her husband's will of the Buri-Buri rancho as "her sole and separate property." In the phrase at the close of the opinion, "without regard to the fact that she may have separate property sufficient for her support," the word "separate" was clearly used in the sense in which the deceased used it in his will—to denote, generally, property owned

by a single individual, and not in the technical sense in which it is used in certain parts of the codes to distinguish, as between a living husband and wife, property owned by both jointly, called "community property," from that owned by one of the spouses individually called "separate property." Indeed, in this technical, statutory sense, the word "separate" is hardly applicable at all to the property of a person at a time when he or she is single or unmarried. Moreover, the language of the court was directed to the facts of the case before it— to the contention that because respondent here received sufficient money from the Buri-Buri rancho to supply her necessaries, therefore, she was not entitled to any allowance. Moreover, the record showed that the respondent had no other property than that derived from the Buri-Buri rancho to which the language of the court can be applied.

It is contended that there is a difference between the two appeals in this: that at the first hearing the record did not affirmatively show that there had been a partial distribution of the Buri-Buri rancho property, while the record on this present appeal does show that fact. If that be so, we cannot see what possible difference it makes. The material point around which appellants' contention revolves is that respondent received a certain amount of money from this particular Buri-Buri property sufficient to support her, and that therefore she is not entitled to further allowance; but the fact that she received this money appeared just as clearly and just as fully in the first record as in the present one. That being so, how would the situation have been substantially changed by the fact that a formal order of distribution had been made? But the truth is that the former decision was made with the understanding and upon the theory that the order of distribution *had been made*. When that appeal was pending there were also pending several other appeals growing out of *Estate of Lux*, which were intimately related to each other, and submitted at the same time, and decided on the same day.

(See *In re Lux, supra.*) In one of these, at least —
*Miller* v. *Lux,* 100 Cal. 609—the transcript showed this
distribution. Whether or not the court in deciding one
of these appeals had a right to look into the records
in the others need not be discussed; because in the ap-
peal we are now discussing—*In re Lux, supra*—counsel
for respondents there (appellants here) stated affirma-
tively that the distribution had been made, and argued
upon that basis. In their brief in that case, speaking
of the petition for allowance, they say: "On the contrary,
it shows that she has $110,000 derived from said estate
through the sale of her life estate in the Buri-Buri
rancho, theretofore distributed to her, from which she
gets an income of $458.33 per month"; and again:
"More than that, her testimony shows affirmatively that
the petitioner was not then dependent upon the estate
for support; that she had received $110,000 from the
sale of her life estate in the Buri-Buri rancho (thereto-
fore distributed to her)." (See Supreme Court Records,
vol. 1165, pp. 13, 15.) Under these circumstances there
is nothing in the very technical point that the record in
the former appeal did not show the distribution. (Of
course, the contention, even if sound, would not apply
to any period prior to the date of the distribution, which
occurred in July, 1890.)

It appears by affidavit that since this appeal was taken
the respondent has died, and the point is made by the
appellants that the right died with her as to all the al-
lowance not actually paid her before her death. The
views of this court on the point were pretty fully indi-
cated at the oral argument by conversations between
counsel and the chief justice. It is sufficient to say that
the order, like any money judgment, was the property
of the respondent; the appeal merely suspended its
operation; but upon its affirmance, if pending the appeal
she has died, it goes to her heirs or personal representa-
tives. Of course, there can be no allowance for any time
subsequent to her death.

We see no other matters necessary to be discussed.

On the former appeal this court said: "The amount of the allowance is a question which rests very largely in the discretion of the superior court, and its action in the matter will not be disturbed on appeal unless it clearly appears that the discretion has been improperly exercised. Of course, as was said in *In re Stevens*, 83 Cal. 325, 17 Am. St. Rep. 252: 'The court is not restricted in making this allowance to a bare support to the widow. Regard should be had . . . . to the mode in which she lived during the lifetime of her husband.' The allowance is to be sufficient to provide all the necessaries of life, and this will include all those things which are reasonable and proper for use in the home and in social intercourse, in view of the condition and value of the estate and the station and surroundings of the family." Tested by these views, the conclusion of the court below cannot be disturbed here, unless we travel beyond the legitimate province of an appellate court.

The order appealed from is affirmed.

GAROUTTE, J., and HARRISON, J., concurred.

BEATTY, C. J., concurring.—I concur in the order of affirmance. If the case was rightly decided on the former appeal there is no error in the last order of allowance, and if it was not rightly decided on the former appeal that decision has nevertheless become the law of the case. The contention here is that the superior court erred at the last hearing in disregarding the legacy of $500 a month, and the partial distribution of the Buri-Buri rancho. As to the legacy of $500 a month, the superior court rightly understood the decision of this court as containing a direction to disregard it. I think, myself, that it should have been considered, because it was a provision made by the testator himself for the support of his widow out of the community property, and to that extent I think the former decision of this court was erroneous. As to the Buri-Buri rancho, I do not think the life estate devised to the widow is,

upon a proper construction of the will, chargeable with the support of the family. That interest, whether distributed pending the administration, or at the close of it, was to go to the widow intact, and undiminished by any charge for expenses of administration or support of family.

TEMPLE, J., dissenting.—I dissent. The former appeal, reported in 100 Cal. 597, was taken by the widow from an order made May 13, 1892. The order was reversed and the cause remanded for further proceedings. Such proceedings were had, and a new order was made March 22, 1894, from which the present appeal is prosecuted by the next of kin.

Lux died testate in March, 1887, and it is stipulated that his estate is of the value of $10,000,000. Nearly all was community property. His family consisted solely of his widow.

The first allowance was for $2,500 per month, until the return of the inventory. This sum was paid to her monthly until November, 1891—four years and eight months. The court ruled, however, that the inventory had been returned August 30, 1888, and that after that time the allowance was paid by the executors at their peril. That is, they would only be allowed a credit for such sum as the court should determine ought to have been allowed.

The order of May 13, 1892, was for $1,000 per month from August 30, 1888. From this order the widow took an appeal, and on the appeal contended that the order was erroneous, because: 1. It was retroactive, and deprived her of the preliminary allowance which she claimed continued until the filing of the inventory of May 16, 1890; and 2. Because it only continued the allowance until November 15, 1891, instead of during the progress of the administration.

This court held that the order was properly made to operate from August 30, 1888, but reversed the order appealed from, and directed the probate court to make

an allowance to the widow to continue during the progress of the settlement of the estate, and in such amount as it shall deem reasonable, without regard to the fact that she may have separate property sufficient for her support.

One trouble with the judgment of reversal and with the opinion is that there was no claim made that Mrs. Lux had any separate property, and in fact she had none except the homestead which had been conveyed to her before the death of the testator. There was no claim that she was deriving any income from it. It appears, then, that she had sold her life estate in the Buri-Buri rancho and had realized $137,000 from the sale, and it was this resource which was specially considered, although it is inaccurately called separate property.

The report does not show that it then appeared that there had been a partial distribution of the estate by which the Buri-Buri rancho was set apart to Mrs. Lux, and with the record used on that appeal before me I find no evidence that such partial distribution had been made. The case presented was that Mrs. Lux had sold her interest as a devisee—the grantee taking it subject to administration. But a widow is not compelled to sell her interest in the estate in order to procure the means of living.

The court in its opinion carefully guarded against the contention that if there had been a partial distribution of the estate such fact would not affect the right of the widow, to her support out of the estate. It said: "Of course, we are not to be understood as holding that the value of the property set apart for the use of the family, under section 1465 of the Code of Civil Procedure, or the income of such property, is not to be considered in determining what is a reasonable allowance to be made from the remaining portion of the estate for the support of the family during the progress of the settlement of the estate; nor that such order for family support, when made, may not be subsequently modified by the court if

the condition of the estate or the relation of the family thereto should change; as if, for instance, it should appear that the value of the estate was materially less than shown at the date of the order sought to be modified, or that its indebtedness is greater than was then supposed, or in the event of a partial distribution to the widow or children before the final distribution of the estate."

If the court may modify or discontinue an allowance because there had been a partial distribution, such fact should be considered in making the allowance if the distribution was made before the discretion of the court is called into exercise.

The record on this appeal shows that there had been a partial distribution by which the Buri-Buri rancho was set apart to Mrs. Lux for life, and also rents which had then accrued, amounting to $33,460. It was assumed that the amount of rents after deducting expenses was $27,000. This was in July, 1890.

The order of reversal must be construed in the light of the opinion. It cannot be understood as directing the court to fix an allowance which should not be modified, even if those changes should take place which are mentioned in the above extract from the opinion. And so, I think, if on the rehearing a different state of facts were shown, there is nothing in the opinion or the judgment which would prevent the court from taking such new facts into consideration.

Respondents argue the case as though the probate court was bound to determine the question as to what allowance will be necessary during the entire progress of the settlement of the estate, at the time the exempt property is set apart to the widow and family. There is no such requirement in the statute, and if there were it would have been a very unwise one. The power of the court and its duty extends to the entire period of administration. It must make such allowance—and such only—as shall be necessary during the progress of the settlement of the administration.

The general expectation is that the administration will be closed in about one year. The exempt property may be amply sufficient for that period and utterly insufficient for a further period. If forced to determine the matter when the exempt property is set apart, it would necessarily determine that no further allowance was necessary. So, too, the exempt property may be unproductive for the first year and after that produce an ample revenue. I think if the court were to make an allowance for the first year, and none for the second because none was required, it would literally comply with the statute. It would have made such reasonable allowance out of the estate as was necessary for the support of the family during the progress of the settlement of the administration.

The duty of the court to make such allowance as may be necessary, and its control over the allowance that it may do so, continues during the entire administration. This proposition is, I think, involved in the above extract from the opinion rendered on the former appeal. The true doctrine was accurately stated in *In re Walkerley*, 77 Cal. 643.

Upon this subject the former opinion, taken as a whole, merely holds that the family of the deceased is entitled to a support from the estate during the progress of the settlement of the estate, although the widow or children may have other resources sufficient for that purpose. The probate judge was of the opinion that, under the order made, he was not at liberty to take into consideration the fact that there had been a partial distribution, or the fact that the widow was entitled, under the will, to $500 per month for life. His construction of the opinion was a reasonable one, but, as to the paragraph above set out, the court expressly disclaimed the intent to so hold. I think the probate court in this matter erred.

As the court found that $2,500 per month was necessary for the support of the family, and it appears that, through the partial distribution, and the provision made

in the will, of which the widow might have availed herself, the sum of about $1,000 was provided, that sum should be deducted from such monthly allowance.

Mrs. Lux has died since this appeal was taken, and it is claimed that her right to an allowance died with her; that she had no title or vested right which could descend to her heir or pass to her administrator. There is surely much plausibility in this contention. In the former opinion it was suggested that the duty of the husband and father for the support of the wife and children rested upon his estate during administration. If a father give to his wife or minor child money to spend for her or its support, the money belongs to the father, or husband, until expended. If the money were placed in the hands of the widow, or guardian, for the minor children, it must be held in trust for that purpose. Upon this theory, logically, when allowance money is paid to the widow, she takes it in trust for the purposes for which it was allowed. Certainly, the widow has no vested interest in an allowance before it is actually made. It is not on the same plane as her distributive share as an heir in the estate. The intent is, that the money shall be immediately expended, and shall not swell the estate of the beneficiaries.

She is not, before the amount is judicially determined, entitled to any specific sum, or, indeed, to anything, but only that the probate judge shall determine whether there is a necessity for an allowance.

The title to the money paid as an allowance is not settled by section 1468. The provisions of that section would be inapplicable. Take the case where there are minor children who are not the children of the widow, and who have guardians of their person and estate. In such case the court might conclude that the widow's share of the exempt property was ample for her support, but that the children needed an allowance. In such case she would not be entitled to any portion of it, and there can be no doubt of the power of the court to dispose of the fund so that the children would be sup-

ported. And, in such a case, if one of the children were to die, would its share of the unused allowance go to its estate?

In this case there are no children, and the suppositions are made simply by way of an argument that until there is money due under some valid order the widow has no vested interest.

Ordinarily the allowance is doled out in such small sums, by means of frequent payments, that this question does not become important, but here the allowance was $30,000 *per annum*, and payments have been stayed for several years by appeals taken from the order. Therefore, when Mrs. Lux died a large amount had accrued.

Since there were no minor children we are not forced to consider questions that might be embarrassing under different circumstances. The practice has been that when the money has been paid the court is not further concerned about it. It will not require the beneficiaries to account for it, but will assume that it was necessary. So far, therefore, as concerns the money which has been paid—if not above what is finally adjudged to be necessary—no question can arise.

And I think the same rule must prevail in regard to allowances which had accrued, but which had not been paid, when Mrs. Lux died. Since it was adjudged in the former appeal that the court would not consider other resources in determining what allowance is necessary, if she had been forced to look elsewhere for her means of support while payments were suspended by the appeals, she, or in case of her death, her estate, should be reimbursed therefor.

It is said that until the order has become final she had no vested right. I do not think it necessary to hold that the order must be final in the sense in which a judgment must be final to be used as evidence of a right. If there had been no appeal, it would not have been final, in that sense, until the time for the appeal had elapsed. It was operative, however, and, though the right to claim the benefit of it was suspended by the

appeal, it was at all times so far operative that his right to the allowance accrued as each fell due, subject to the chance that the order would be reversed.

I think the order appealed from should be modified by reducing the amount of the allowance to $1,500 per month, and as modified affirmed.

HENSHAW, J., concurred in the dissenting opinion.

Rehearing denied.