[S. F. No. 5928. Department One.—February 7, 1913.]

In the Matter of the Estate of ERNEST V. COWELL, Deceased.

ESTATES OF DECEASED PERSONS—FAMILY ALLOWANCE—AMOUNT OF TEMPORARY ALLOWANCE—DISCRETION—APPEAL.—In determining the amount of the temporary family allowance required by section 1464 of the Code of Civil Procedure to be paid to a surviving wife from the estate of her husband until the return of the inventory, much is left to the discretion of the judge to whom the application is made, and his action will not be disturbed on appeal unless it clearly appears that the discretion has been improperly exercised. In the present case, where the estate was valued at about a million dollars, and was not indebted, it is held that a temporary allowance of one thousand five hundred dollars per month for the sole support of the decedent's widow was not an abuse of discretion.

ID.—WIDOW HAVING OTHER MEANS OF SUPPORT—BEQUESTS TO WIDOW BY HUSBAND—WIDOW NOT PUT TO ELECTION.—Under the statutes of this state, the fact that a widow has property of her own or other means of subsistence, or is given bequests or devises by the will of her husband, not putting her to an election, in no way affects her right to such a temporary allowance from his estate as is reasonably necessary for her support. And the same is true as to her right to an allowance, under section 1466 of the Code of Civil Procedure, after the return of the inventory.

ID.—HUSBAND CANNOT DEPRIVE WIDOW OF RIGHT TO FAMILY ALLOWANCE—WIDOW PUT TO ELECTION.—It is not within the power of the husband by any provision of his will to deprive the widow of her right to a family allowance from his estate under the statutes, or in any wise to limit the power of the court in the exercise of its proper discretion to fix the amount to be allowed. He may, however, so frame his will that she cannot have the benefits thereby given her and those of the statutes also, and she will then be put to her election which she will take.

ID.—LANGUAGE OF WILL NECESSITATING ELECTION.—To put the wife to such an election, it is not necessary that the husband's will should contain an express declaration to that effect. It is sufficient that it should clearly appear from the language of the will that such was his intention. In the absence of such an express declaration there is no presumption of an intention on the part of the testator to put the widow to her election. To accomplish this result it must clearly and unequivocally appear that the provision made by the will was intended to be in lieu of such rights as are given by the law.

ID.—CONSTRUCTION OF WILL IN QUESTION—ELECTION NOT NECESSARY.—The testator, whose estate was valued at about one million dollars, the greater part of which consisted of stock in various manufacturing corporations in which he and his brother and sisters owned all the stock, by his will directed that his interest in such corporations should be converted into cash within seven years, and that in the mean time "the properties" should pay his wife the sum of one thousand dollars a month, and at the end of that period she should receive the income from two hundred and fifty thousand dollars during her life. At her death said sum was to be paid to the regents of the University of California, to whom a legacy of five hundred thousand dollars was also given "as soon as the money became available." After certain minor bequests, to pay which he directed that so much of his interest in such corporations as was necessary should be sold within one year, he further provided, in order that the affairs of such corporations might not be interfered with, that if all the bequests were paid within the seven years, it would not be necessary to sell any more of his interests, and that whatever remained after

paying "these bequests and final settlement" should become the property of his brother and sisters. In the event that none of them survived, the residue was left to such regents for specified purposes. *Held,* that there was nothing in the will inconsistent with the right of the widow to receive a family allowance and that she was not put to an election.

ID.—ABSENCE OF WITNESS—REFUSAL OF CONTINUANCE.—It was not prejudicially erroneous to refuse to continue the hearing of the widow's application for a family allowance, on account of the absence of a witness for the estate, if the substance of the testimony expected to be elicited from him was given by another witness.

APPEAL from an order of the Superior Court of the City and County of San Francisco directing the payment of a family allowance from the estate of a deceased person until the return of the inventory of the estate. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Mastick & Partridge, for Appellants.

W. I. Brobeck, and P. F. Dunne, for Respondent.

ANGELLOTTI, J.—This is an appeal by a brother and two sisters of deceased, who are residuary legatees under his will, from an order directing the payment to Alice M. Cowell, his widow, for her support, of the sum of one thousand five hundred dollars per month, from the date of his death, March 18, 1911, until the return of the inventory of his estate.

The deceased left an estate valued at about one million dollars. The greater portion of this estate was his one-fourth interest in the property distributed in the estate of his father, Henry Cowell, his brother and two sisters owning the remaining three-fourths. The greater part of this again was held through three corporations, engaged generally in the manufacture of cement, of which he, his brother and sisters owned the stock, he holding one-fourth. These corporations were indebted to the extent of some six hundred thousand dollars, which indebtedness, on account of the very large earnings reasonably anticipated, would probably be wholly discharged in two or three years if no dividend was declared. It is not suggested that the estate of deceased was at all indebted,

except in so far as it might be liable on account of the indebtedness of these corporations. There was a parol understanding between the brothers and sisters that all earnings of the corporations shall be applied to the payment of the debt until the same is discharged. The property of the Henry Cowell estate outside of the corporations yielded an annual income of about twenty-five thousand dollars, of which deceased owned one-fourth. In addition to this deceased owned stock in the Bank of California valued at twenty thousand dollars and about twenty-three thousand dollars in cash in bank.

Deceased left no heir other than his wife and his brother and sisters.

By his will deceased provided as follows: All cash and bank stock were "to be at once delivered" to his wife, "whom I desire appointed executrix without bonds for all such property." He then declared:

"Second:

"I desire that all my one-fourth interests in the various Cowell properties be converted into cash within seven years, and that until such distribution, the properties are to pay my wife Alice M. Cowell the sum of one thousand dollars in gold coin on the first of every month. At the end of seven years she is to receive the income from two hundred and fifty thousand dollars as long as she may live. At her death the said two hundred and fifty thousand dollars is to be paid to the regents of the University of California for the purpose of building a hospital on the grounds at Berkeley."

He then gave, "as soon as the money becomes available," five hundred thousand dollars to the regents of the University of California for a students' gymnasium and a stadium on the grounds at Berkeley. He then gave legacies of one thousand dollars to certain employees and five hundred dollars to others, two thousand five hundred dollars each to Patrick Dorsey and Cornelius Coghlan and a legacy of ten thousand dollars to the Cowell Scholarship Committee of Santa Cruz. He then directed that as much of his one-fourth interest in the Cowell properties as was necessary to pay the "minor bequests" should be sold within one year. He then provided as follows:

"Tenth:

"That the affairs of the Cowell Co. may in no wise be interfered with, I hereby direct that if all these bequests are paid within seven years from the date of my death it will not be necessary that any more of my interests be sold than will carry out these bequests. Whatever remains after paying these bequests and final settlement is to become the property of my brother and sisters."

He then provided: "if none survive" the residue shall go to the regents of the University of California for certain purposes, and appointed his wife and Alexander F. Morrison executors without bonds.

The allowance made was what was styled by Mr. Justice De Haven in *Estate of Lux,* 100 Cal. 593, [35 Pac. 341], the "preliminary or temporary allowance" required to be made by section 1464 of the Code of Civil Procedure, which provides that when a person dies leaving a widow or minor children, the widow or children, until the inventory is returned, are entitled to remain in the possession of the homestead, the wearing apparel of the family, and of all the household furniture, "and are also entitled to a reasonable provision for their support, to be allowed by the superior court or a judge thereof." The allowance so made terminates upon the return of the inventory (*In re Lux,* 100 Cal. 593, [35 Pac. 341]; *Crew* v. *Pratt,* 119 Cal. 137, [51 Pac. 44]; *Estate of Bell,* 142 Cal. 100, [75 Pac. 679]), when the court may make an order for such allowance as may be necessary during the further progress of the settlement of the estate. (Code Civ. Proc., sec. 1466.)

It is urged that the amount allowed was much greater than any sum reasonably necessary for the support of the widow. In the determination of a question of this character much is necessarily left to the discretion of the judge to whom the application is made. His action will not be disturbed on appeal unless it clearly appears that the discretion has been improperly exercised. (*In re Lux,* 100 Cal. 605, [35 Pac. 341]; *Estate of Bump,* 152 Cal. 279, [92 Pac. 643].) "The court is not restricted, in making this allowance, to a bare support for the widow. Regard should be had . . . to the mode in which she lived during the lifetime of her husband. The allowance is to be sufficient to provide all the necessaries

of life, and this will include all those things which are reasonable and proper for one in the home and in social intercourse, in view of the condition and value of the estate and the station and surroundings of the family.'' (*In re Lux*, 100 Cal. 593, [35 Pac. 341].) In view of the condition and value of this estate the widow was entitled to continue to live, if she so desired, at the hotel where she and her husband had lived for several years immediately preceding his death, and to be maintained in such a way, as regards board, lodging, attendance, clothing, and the comforts of life generally, as would be considered reasonable and proper for the widow of one leaving an estate valued at a million dollars, for it seems clear that the estate of deceased, after payment of debts, will easily reach that amount. This leaves a wide range for the discretion of the judge in probate, and even if we were inclined in view of the record on this appeal, to consider that the amount allowed is more than we would have given had we been in his place, invested with the discretion committed by the law to him, we are of the opinion that it is not so high, in view of the circumstances and condition of the estate, that we can say that there has been any abuse of discretion on his part.

It seems to be well settled under such statutes as ours that the fact that a widow has property of her own or other means of subsistence, in no way affects her right to such an allowance from the estate of her deceased husband as is reasonably necessary for her support. The statute gives her this right to be so supported by the estate, regardless of her own means. (See *Estate of Lux*, 100 Cal. 604–5, [35 Pac. 341]; *Estate of Bump*, 152 Cal. 276, [92 Pac. 643].) And it also appears to be settled in this state, even as to an allowance made under section 1466 of the Code of Civil Procedure after the return of the inventory, that the fact that the widow is given property by the will of her husband in no way affects her right to be given by way of allowance for support such sum as is reasonably necessary therefor, leaving the property given her by the will, in the words of the chief justice in his concurring opinion in *Estate of Lux*, 114 Cal. 83, [45 Pac. 1026], ''whether distributed pending the administration, or at the close of it, . . . to go to the widow intact, and undiminished by any charge for expense of administration or support of

family.'' (See *Estate of Lux,* 100 Cal. 593, [35 Pac. 341];
Id. 114 Cal. 73, [45 Pac. 1023].) Especially does it appear
to us that bequests and devises to the wife are altogether
immaterial in connection with the question of the preliminary
or temporary allowance to be made at the outset for the period
prior to the return of the inventory. We can see no good
reason for concluding that it affects the question that a be-
quest or devise is by the terms of the will made available to
the widow, in whole or in part, at once. This appears to
have been the view of at least four of the justices in *Estate
of Lux,* 114 Cal. 73, [45 Pac. 1023]. Of course, we are not
now speaking of such a provision in a will as puts the widow
to her election.

It is not within the power of the husband by any provision
of his will to deprive the widow of her right to a family allow-
ance from the estate under the statutes, or to in any wise
limit the power of the court in the exercise of its proper dis-
cretion to fix the amount to be allowed. (See *Estate of
Bump,* 152 Cal. 278, [92 Pac. 643], and cases there cited.)
But, of course, he may so frame his will that she cannot have
the benefits thereby given her and those of the statutes also,
and she will then be put to her election which she will take.
(Id.) It is claimed that deceased so did. His will nowhere
declares in express words that the provision made for his wife
is in lieu of such provision for her support during the admin-
istration of the estate as she would be entitled to under the
statutes of this state, as was the case in *Estate of Bump,* 152
Cal. 278, [92 Pac. 643], and *Estate of Lufkin,* 131 Cal. 291,
[63 Pac. 469]. In the will before us such provision as is
made for the wife is in terms absolute and unconditional.
But it is not essential to the imposition of the duty of elec-
tion that a declaration to the effect above stated should be
expressly made. It is sufficient that it should clearly appear
from the language of the will that such was the intention of
the testator. We do not understand, however, that in the
absence of such an express declaration there is any presump-
tion of an intention on the part of the testator to put the
widow to her election. To accomplish this result it must
clearly and unequivocally appear that the provision made by
the will was intended to be in lieu of such rights as are given
by the law.

We do not think that such is the situation here. The provision that "the properties are to pay" the widow one thousand dollars on the first day of every month "until such distribution" does not so show such an intention. While the language of the provision of the will numbered "second," which is the only provision in the will in her favor with the possible exception of the preceding provision as to cash and bank stock, is not as well chosen as it might have been, we think it clear enough that the design thereof was practically to give to the wife as a bequest the income for her life from two hundred and fifty thousand dollars of his estate, from the time of his death. As he desired that there should be no immediate segregation of his interest from the other "Cowell properties," he definitely fixed one thousand dollars as the amount that she should receive monthly from his death until his interest should be so segregated, fixing the end of seven years as the time by which the division must be made. The amount so fixed was what might reasonably be considered a fair return on two hundred and fifty thousand dollars safely invested, being just a trifle less than five per cent per annum on such amount. When the segregation or "distribution" as he puts it is had, she is thenceforth to receive the income of two hundred and fifty thousand dollars thereof. The gift thus made is absolute and unconditional, with absolutely nothing being said to indicate that it is anything else than a legacy. Whether we call it an annuity or a demonstrative legacy is unimportant here. We see nothing in the fact that it was contemplated that the amount fixed was to be paid monthly from the time of the death of the deceased, to require a different conclusion.

We are of the opinion that there is nothing in the will inconsistent with the right of the widow to receive a family allowance. The deceased has not thereby disposed of all property other than that given to the widow "in such a way as to make it apparent that the assertion by the widow of the right to take, both under the law and under the will would defeat the manifest purpose of the testator." (See *Shipman* v. *Keys*, 127 Ind. 353, [26 N. E. 896].) It is not pretended that all the bequests made thereby cannot be fully paid in such event. The only persons who will suffer thereby are those who are given "whatever remains after paying these

bequests and final settlement." These are the brother and sisters of deceased (appellants here) if they or any of them are then alive, and if none survive, then the regents of the University of California, who have already been given five hundred thousand dollars outright, and, upon the death of the wife, the two hundred and fifty thousand dollars set apart for her use during her life. We thus have as to these parties merely a general disposition of what may be left after all bequests and charges are paid. Such a disposition is not at all inconsistent with the assertion by the widow of her statutory right to a family allowance notwithstanding the provision made for her by the will. (See *Shipman* v. *Keys*, 127 Ind. 353, [26 N. E. 896].) It is to be noted that the language is "whatever remains after paying these bequests *and final settlement*," clearly referring only to such property as may remain at final settlement after not only the bequests have been paid, but also all such other amounts as may lawfully be required to be paid in the course of the administration and settlement of the estate. This would of course include such amounts as the widow was entitled to as family allowance under the statutes of the state. As said in the case last cited, such a disposition will be construed as made in view of the absolute statutory rights of the wife and subject thereto.

We see nothing in the expressed desires of the testator with regard to sales and refraining from interference with the affairs of the "Cowell Co." to any greater extent than is necessary, that materially assists in the determination of the question before us. The same is true as to the evidence that there was an understanding between deceased and his brother and sisters, the stockholders in the Cowell corporations, that all the earnings thereof shall be applied to the discharge of the indebtedness thereof until the same is fully paid, even if we assume that this evidence may properly be taken into consideration in determining the proper construction of the will in the matter under consideration.

Taking the will as a whole, we are unable to find therein any sufficient warrant for a conclusion that the widow was thereby put to her election in the matter of family allowance.

There was certainly no prejudicial error in refusing to continue the hearing of the application for family allowance until the return of Mr. George, who was desired as a witness by

appellant, from Oregon. The testimony expected to be elicited from him, as stated by the attorney for appellants to the court below, was in no substantial respect different from that given by Mr. Morrison, one of the executors, the only witness who testified in detail as to the condition and circumstances of the estate. While the testimony given by him was in many respects hearsay, his information having been largely obtained from Mr. George, it was received without objection, and, as said before, was in substantial accord with what the learned attorney for appellants stated he expected to prove by Mr. George.

The order appealed from is affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.