ESTATE OF RALPH RAINGER, DECEASED, ELIZABETH RAINGER, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8995. Promulgated March 30, 1949.

*Harry J. Miller, Esq.,* and *George T. Altman, Esq.,* for the petitioner.

*H. A. Melville, Esq.,* for the respondent.

## OPINION.

KERN, *Judge*: By amendment effective October 21, 1942, (two days before the death of decedent) section 811 (e) (2) of the Internal Revenue Code [3] required the inclusion of all community property in the gross estate of the decedent.

Petitioner contends that the decedent owned no community property, but only a one-half interest in property owned by the decedent and his wife as tenants in common. Under the California community property system, all property acquired by either spouse during the existence of the marital union, except by gift, devise, bequest, or descent, is presumed to belong to the community, the husband and wife each owning a vested, present, existing, and equal interest, under management and ocntrol of the husband. See California Civil Code, secs. 161 (a), 162, 163, 164, and 172.

In California the husband and wife may enter into an agreement with each other altering their legal relations as to property and effecting a transmutation of community to separate property which will

---

[3] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *.

(e) JOINT AND COMMUNITY INTEREST.—

* * * * * *

(2) COMMUNITY INTERESTS.—To the extent of the interest therein held as community property by the decedent and surviving spouse under the law of any state, territory, or possession of the United States, or any foreign country, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. In no case shall such interest included in the gross estate of the decedent be less than the value of such part of the community property as was subject to the decedent's power of testamentary disposition.

be recognized for Federal tax purposes. *Boland* v. *Commissioner*, 118 Fed. (2d) 622; *O'Bryan* v. *Commissioner*, 148 Fed. (2d) 456.

Under the law of California, and by reason of the presumption raised by respondent's determination, the burden of proving that the community property was transmuted into separate property is upon petitioner. Petitioner does not contend that a deliberate gift of any property, as such, was made by decedent to his wife, or that decedent and his wife entered into a specific contract deliberately intended to transmute community property into separate property.

Petitioner's argument on this point may be summarized as follows: The concept of community property "presupposes that the husband has the management and control of it as he has of his separate estate"; "the management and control of property by the wife is inconsistent with community property"; in the instant case the wife, not the husband, "had the management and control"; and therefore, "the property *could not* have been community property." [4] (Italics supplied.)

Petitioner cites no direct authority for this contention, and we are unable to find California cases squarely decisive of the question. However, we reject the contention for two reasons.

First, we are not satisfied that petitioner has established that the decedent actually did divest himself of management and control of their joint property and, particularly, of the bank account. The funds were at all times treated as a unit and were used for community expenditures such as food, shelter, travel, clothing, and medical expenses for the husband, wife, and children. The funds were also used to pay premiums on the decedent's life insurance and annuity policies, as well as to pay the purchase price for the home, owned in joint title. There is no showing as to who contracted these obligations and in reality exercised control and management incident to their payment. The funds were deposited in a joint account, then placed in the separate account of the wife, then redeposited in a joint account, and finally returned to the separate bank account of the wife when the decedent again found it impossible to refuse the loans to friends and acquaintances. It is not unlikely that the transfer of the community funds held in the joint bank account to the wife's separate account was a subterfuge to avoid requests for money and did not, and was not intended to, change as between decedent and his wife the community ownership or divest the decedent of the right or power to manage and control this property.

Second, we gather from cases such as *Fennell* v. *Drinkhouse*, 131 Cal. 447; 63 Pac. 734; and *Salveter* v. *Salveter*, 135 Cal. App. 238; 26 Pac. (2d) 836, that the exclusive and permanent control and management by the husband of community property is not a prerequisite to the

---

[4] Quotations are from petitioner's opening brief, pp. 33–34.

existence of ownership by the community, but is a resulting incident, a characteristic rather than an element. The well established and persistent practice on the part of the husband of permitting the wife control and management over income and property may properly be considered as circumstantial evidence corroborating the existence of an agreement between them that the property or income be transmuted from community into separate property or income, but this transmutation results from the agreement and not from the shifting of management and control. See *Kaltschmidt* v. *Weber*, 145 Cal. 596; 79 Pac. 272.

If there is no agreement between the husband and wife transmuting community property into separate property, then the exercise of management and control by the wife will be considered as exercised by her as agent or trustee for the husband. See *Salveter* v. *Salveter*, *supra*, where the court said "[the wife] was [the husband's] agent, and all moneys collected by her were held by her in trust, subject to his order and disposition * * *." Unless there is some agreement affecting the community ownership of property, the temporary relinquishment of management and control by the husband to the wife no more terminates the community ownership of property than the relinquishment of possession. See *Fennell* v. *Drinkhouse, supra*. The fundamental error in petitioner's syllogism is his conclusion that, because at the time of decedent's death the wife "had the management and control," the property could not have been, as a matter of law, community property.

The fact that the decedent's wife "had the management and control" may be properly considered as circumstantial evidence corroborating an agreement made by them and intended to transmute community property into separate property. We have considered the evidence as to the wife's management and control, but have rejected the conclusion urged by the petitioner for two reasons: (1) We are not persuaded that the wife, in reality, had exclusive management and control, and (2) a consideration of the facts in the record bearing upon this issue persuades us that there was no agreement on the part of decedent and his wife intended to transmute community property and income into separate property and income.

Since the petitioner, on the record before us, has not proved that respondent erred in his determination that the property here in question was owned by decedent and his wife as community property, and since we are of the opinion for reasons later made explicit that a contrary finding of the state court is not binding upon us in this proceeding, we conclude, and have so held, that respondent must prevail upon this issue.

In view of the disposition of this issue, the alternative question of estoppel becomes moot.

The second issue is whether the decedent owned some right, title, or interest in the popular songs he wrote, or some rights in connection with his membership with Ascap which are includible in the gross estate. The value of this property, assuming its existence, has been determined by respondent to be in the amount of $50,000, and no evidence as to value has been adduced by petitioner.

Both this issue and the community property issue were the subject of state court litigation. The first determination of these issues was made in the state inheritance tax proceedings. Subsequent orders and decrees of the state court, including the decree for partial distribution entered August 10, 1945, were secured in uncontested proceedings by reciting the decree of the inheritance tax determination.

An adjudication of property rights by a state court of competent jurisdiction entered in a bona fide adversary proceeding and after a hearing on the merits is binding upon this Court. *Freuler* v. *Helvering*, 291 U. S. 35; *Blair* v. *Commissioner*, 300 U. S. 5. However, "the rule applies only to a decision entered in a proceeding presenting a real controversy for determination. The decision must settle issues regularly submitted and not be, in any sense, a consent decree." *Tatem Wofford*, 5 T. C. 1152, 1162, and cases cited; *Leslie H. Green*, 7 T. C. 263; affd., 168 Fed. (2d) 994.

The local probate court proceedings were initiated through the inheritance tax assessment and determinations. Pursuant to California law, Act 8495, sec. 16, the California inheritance tax appraiser filed a report which is the equivalent of a complaint or petition with the probate court. The principal contest arose over including in the decedent's estate, for inheritance tax purposes, the "value of domestic and foreign copyrights owned by decedent, including renewal rights and also including performance rights, as evidenced and affected by contract with American Society of Composers, Authors and Publishers * * *." After the Federal estate tax controversy arose, involving the inclusion of all community property in the decedent's estate in accordance with the new provisions of the Internal Revenue Code, which became effective two days before the death of the decedent, the objections to the inheritance tax appraiser's report were amended to include the issue that the decedent owned no community property. The attorney for the state controller appearing in support of the appraiser's report objected to the belated amendment to the objections. He was mollified by the statement of counsel appearing for petitioner that in any event there was to be a fifty-fifty division of the property in the same manner as community property. Oral testimony of two witnesses was then given as to the common law form in which the bank accounts were held and the decedent's

statements in connection therewith. No documentary matters were introduced in evidence, there was no cross-examination of the witnesses, and no opposing evidence, testimony, or arguments. Petitioner persisted in attempting to introduce arguments in support of his position. The attorney for the state controller again stated that there was no controversy as far as the State of California was concerned. He stated that the issue did not make a "nickel's worth" of difference for inheritance tax purposes. Petitioner's attorney argued that there must be a contest, since he did not want the Federal authorities to be able to claim a consent decree. The probate judge ended the discussion by expressly "passing" the argument on that issue. See the full text of these statements set out as footnote 1 in the findings of fact. The only possible conclusion is that there was no decision on the merits as to the community property issue. See *First-Mechanics National Bank of Trenton* v. *Commissioner*, 117 Fed. (2d) 127; *Commissioner* v. *Childs' Estate*, 147 Fed. (2d) 368; *Leslie H. Green, supra.*

In direct contrast to the separate community property issue, the so-called Ascap issue did present a real controversy and there is no hint of consent or collusion for tax purposes. There were no irregularities in the pleading. The controversy was brought before the probate court in due course. The issue was bitterly contested. Arguments, documentary evidence, and oral and transcribed testimony were introduced on both sides. Depositions from witnesses as far away as New York were introduced in evidence. The judge was required to rule in favor of or against each party as questions arose in the trial, and ultimately to decide the issue presented.

A decree of partial distribution was secured, stating the same conclusions as in the inheritance tax decree. This proceeding was wholly uncontested and the court decree was a mere copy of the petition, which, in time, recited and relied upon the inheritance tax decree. There is nothing in this order, or decree, changing the community property issue to a real controversy or converting the adjudication of the Ascap issue into a consent decree.

While the decision of the state court on the so-called Ascap issue was, in our opinion, the decision of a real controversy, it does not necessarily result that it is binding upon us in this proceeding. The questions remain whether the precise issue before us was explicitly involved in the rather loose pleadings filed in the state court litigation, or was implicitly decided, in a proceeding arising under the inheritance laws of California and thus involving an ultimate question different from that involved in Federal estate tax litigation. There is also the question raised by petitioner of whether we can accept the decree of the state court on one issue, while disregarding it on another.

These questions we need not and do not decide, since, even if we approach the question without giving effect, or, indeed, consideration to the decision of the state court, we would, and do, conclude that decedent at the time of his death possessed property rights in and to musical compositions which were properly includible in his estate. A reading of the contracts between decedent and the moving picture studios indicates that the nondramatic performing rights in and to decedent's compositions were reserved by him and were his property. These performing rights were assigned by him for limited periods to Ascap, which was in effect an organization acting as a cooperative agency for composers, authors, and publishers in obtaining for them the greatest possible remuneration and in making an equitable division thereof. These services of Ascap were valuable to decedent and added value to the performing rights to his musical compositions as to which assignments were made for limited periods to Ascap for the purpose of accomplishing the aims of the agency. Since decedent was a noted composer and his compositions were popular, Ascap was interested in obtaining and retaining the performing rights to these compositions. It was reasonably to be anticipated that Ascap, upon the death of decedent, would make similar arrangements with the person who should acquire, by will or by law, the public performance rights to these compositions upon the death of the composer. The wife acquired these rights upon the death of decedent, and she executed similar assignments to Ascap. Thereafter she received the same distributions from Ascap on account thereof as decedent had received. Only by reason of her acquisition of the public performance rights to decedent's compositions did she become entitled to such membership and distributions. Any contention of petitioner that decedent had completely parted, prior to his death, with all property rights in and to his compositions, and that the later membership of decedent's widow in Ascap was in the nature of a gratuity to her, is not supported by a realistic appraisal of the facts.

This issue is accordingly decided in favor of respondent.

The third issue is whether petitioner estate is entitled to a deduction for support of decedent's dependents in excess of $24,000 allowed by the Commissioner.

Section 812 (b) (5) of the Internal Revenue Code allows the estate the deduction of such amounts "reasonably required and actually expended for the support during settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered  *  *  *."

Regulations 105, section 81.40, states:

\* \* \* The support of dependents of the decedent during the settlement of the estate is deductible but pursuant to the following rules:

(a) In order to be deductible, the allowance must be authorized by the laws of the jurisdiction in which the estate is being administered, and not in excess of what is reasonably required.

(b) The allowance for which deduction may be made is limited to support during the settlement of the estate. Any allowance for a more extended period is not deductible.

(c) There must be an actual disbursment from the estate to the dependents, but after payment has been made the right of deduction is not affected by the fact that the dependents do not expend the entire amount for their support during the settlement of the estate.

It is apparent that the widow and children are dependents of the decedent within the meaning of *Estate of Jacobs*, 8 T. C. 1015. It is apparent also that California grants a family allowance of support in accordance with the prior mode of living. See *Estate of Bump*, 152 Cal. 274; 92 Pac. 643; *Estate of Cowell*, 164 Cal. 636; 130 Pac. 209. The amount of support is not conditioned by the fact that the dependents may have had separate income. *Estate of Middlekauff*, 2 T. C. 203.

However, after applying the statute and quoted regulations to the facts as disclosed by the record, and having considered all the pertinent factors pointed out by the parties hereto, we have reached the conclusion, already appearing in our findings of fact, that the amount of $50,000 constitutes an allowance for the support of decedent's dependents during the settlement of the estate which was reasonably required and actually expended.

*Decision will be entered under Rule 50.*