ELIZABETH JOHNSON VAN SLYKE, EXECUTRIX OF EVERT
VAN SLYKE, DECEASED, PLAINTIFF-PLAINTIFF IN
ERROR, v. ADELAIDE PLUME VAN SLYKE, DEFEND-
ANT-DEFENDANT IN ERROR.

Submitted June 27, 1910—Decided November 14, 1910.

1. In determining the effect of an instrument containing words that
   taken by themselves would operate as a general release, all the
   provisions of the instrument must be read together; and if on
   such reading an intent to limit the scope of the release appears,
   it will be restricted to conform to such intent.
2. The rule laid down in some cases that particular recitals follow-
   ing general words in a release are ineffectual to limit its scope
   as indicated by the general words, is not an absolute one, though
   useful in ascertaining the intent of the releasor; and is subordi-
   nate to the general rule that the intent is to be gathered from
   the entire instrument.
3. A paper containing general words of release recited in its pre-
   amble the existence of litigation between the parties and others,
   the prior execution of a compromise agreement to terminate
   such litigation, and that the paper itself was executed in
   accordance with the compromise agreement and for the purpose
   of carrying into effect its provisions. *Held*, that the release
   and compromise agreement must be construed together and that
   the release was limited in its scope to the objects provided in
   the compromise agreement.

---

On error to the Supreme Court.

For the plaintiff in error, *McDermott & Enright.*

For the defendant in error, *Robert R. Howard.*

The opinion of the court was delivered by

PARKER, J. The suit is on a promissory note for $4,140 made by defendant's husband, now deceased, in his lifetime, to plaintiff's husband. Defendant, besides being the widow, is one of the executors, and principal legatee of Evert Sheldon Van Slyke, the maker of the note, and although no claim on said note was ever presented to his executors, defendant is sought to be held personally liable under section 1837 of the New York code of civil procedure, which provides that "an action may be maintained as prescribed in this article, against the surviving husband or wife of a decedent, and the next of kin of an intestate, or the next of kin or legatees of a testator, to recover, to the extent of the assets paid or distributed to them, for a debt of the decedent, upon which an action might have been maintained against the executor or administrator. The neglect of the creditor to present his claim to the executor or administrator within the time prescribed by law for that purpose, does not impair his right to maintain such an action."

There was adequate proof that the defendant, Adelaide Plume Van Slyke, received sufficient from her husband's estate to cover the amount claimed on the note, and assuming the validity of such note, and that it was in force at the time of bringing suit and of the trial, no question seems to be raised as to the right of plaintiff to recover thereon in this state. The defences made at the trial were, first, that the note was usurious and shown to be such by a special endorsement thereon; and secondly, that the claim was barred by a release and agreement introduced in evidence. The question of usury may be shortly disposed of by saying that the alleged endorsement, though appearing in one of the briefs, is not submitted as part of the state of the case, and that there is no proof anywhere in the case as to the party by whom it was made, or tending except by internal evidence and the fact that it is written on the back of the note, to connect plaintiff or her testator therewith. It is not even signed. The point was raised only on motion to nonsuit, and counsel did not even think it worth while to pray an exception to the refusal. The claim is

not fairly before us, and we mention it only because defendant in error presses it as an additional reason to justify the subsequent direction of a verdict in her favor. Viewed in the best possible light, it presented a question of fact as to authenticity, aside from any question as to its legal effect if authentic.

The important feature of the case is the release, and an agreement which it recites and which was put in evidence with it. These papers were admitted over plaintiff's objection and exception, and were the basis of a direction of a verdict for defendant, to which plaintiff also excepted and assigns both rulings for error.

Plaintiff's position, shortly stated, is that the release is not general but special, and does not cover the clause in question. The court took the view that it was general, and that it barred the action accordingly.

For a proper understanding of the two papers some account of the family relations of the parties and of earlier transactions will be necessary.

Evert Van Slyke, plaintiff's testator, was the father of Evert Sheldon Van Slyke, defendant's husband. Both Evert and his son appear to have been interested in the estate of Sarah D. Van Slyke, and in the estate of Henry A. Sheldon. Evert, the father, was administrator of the estate of Sarah, and apparently there was some controversy over his management of the estate. Evert Sheldon Van Slyke (hereafter called Sheldon) seems to have made some assignment of his interest in the Sarah Van Slyke estate to one Aikman, while this controversy was pending, and then to have undertaken to settle with his father, the administrator, and to give the latter a release without recognizing Aikman, whereupon Aikman interposed with an injunction. Before this litigation was completed, Sheldon died, leaving a will, giving his father for life half the income of certain property derived from certain other Sheldon estates, with remainder and all the rest of his property to his wife, and appointing her and one Allen his executors.

In this general posture of affairs, several litigations over

one or more estates being in progress, an all-around settlement was made between Aikman; Evert Van Slyke, personally, and as administrator of Sarah; the executors of Sheldon Van Slyke; and his widow, Adelaide, individually; and this settlement is embodied in the agreement recited in the release in question and which was introduced in evidence with it. Omitting portions not relevant to this discussion, it provided for payment to Aikman and withdrawal of his suit; for payment by Evert as administrator of Sarah Van Slyke to Sheldon's executors of $10,437.50, less the Aikman claim; that the executors of Sheldon release Evert as administrator of Sarah from all liability as such upon his resigning his office as administrator; and later on that the executors of Sheldon execute a release to Evert "of all matters to date." On his part Evert was to release, in consideration of a cash commutation on the plan of purchasing an annuity, his life income in part of Sheldon's estate, and was to execute and deliver a release to the executors of Sheldon of all interest in and to the estate of Sheldon, "as to any assets now in hand or to be received under this agreement." These provisions will be presently quoted entire.

With these facts before us, we come to the release, which may as well be quoted in full, omitting date, signature and acknowledgment. It was given some three years after the note and reads as follows:

"WHEREAS, Evert Van Slyke has submitted an accounting as administrator of Sarah D. Van Slyke, and Adelaide Plume Van Slyke and Lewis H. Allen, as executors of, &c., of Evert Sheldon Van Slyke, deceased, have opposed said accounting, and Charles M. Aikman has brought an action, among other things, to have a certain release proved on said accounting annulled; and

"WHEREAS, the parties on November 27th, 1905, entered into a compromise agreement wherein and whereby they covenanted to adjust their differences as therein provided.

"*Now, therefore,* in accordance with said compromise agreement and for the purpose of carrying into effect its said provisions,

"*Know ye,* that I, Evert Van Slyke, for and in consideration of the sum of one dollar, lawful money of the United States, and other valuable consideration, to me in hand paid by Adelaide Plume Van Slyke and Lewis H. Allen, executors of the estate of Evert Sheldon Van Slyke, deceased, have remised, released, and forever discharged, and by these presents do for myself, my heirs, executors, administrators and assigns, remise, release and forever discharge the said Adelaide Plume Van Slyke and Lewis H. Allen, executors of the estate of Evert Sheldon Van Slyke, deceased, their survivor, successor or successors, of and from all and all manner of action and actions, cause and causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which against them I ever had, now have, or which my heirs, executors, administrators or assigns hereafter can, shall, or may have for, upon or by reason of any matter, cause or thing whatsoever, and particularly any of the acts of the said Adelaide Plume Van Slyke and Lewis H. Allen, executors of the estate of Evert Sheldon Van Slyke, from the beginning of the world to the day of the date of these presents.

"*Further,* I, Evert Van Slyke, for myself, my heirs, executors, administrators and assigns, do hereby release said Adelaide Plume Van Slyke and Lewis H. Allen, as executors, of the estate of Evert Sheldon Van Slyke from rendering any accounting for any moneys or property heretofore received by them as such executors, now in hand, or to be received under the agreement of November 27th, 1905, hereinbefore referred [to], especially relinquishing my life interest therein as by the terms of the will of said Evert Sheldon Van Slyke provided."

Counsel for the defendant stated no grounds for his motion for a direction, and the trial judge gave none. The only possible ground, however, on which a direction could be rested in view of the evidence, is that now urged by defendant in error, namely, that the release operated as a bar to any claim

on the note. We think this was erroneous. The release does not mention the note, either expressly or by implication, and, consequently, the only theory on which it can be deemed to affect it, is that the general words of release are broad enough to cover it and are not limited or qualified by other language of the instrument so as to be deprived of their full natural force. In construing a release, as in the case of any other writing, all parts of it are to be taken together. 34 *Cyc.* 1076; 24 *Am. & Eng. Encycl. L. (2d ed.)* 294. The question how far general words are to be controlled by particular recitals, has seemed to depend somewhat upon the position of such recitals in the release. Thus it has been held in a number of cases that if the release is in general terms, followed by particular recitals, the latter do not control the general language preceding them. *Dunbar* v. *Dunbar,* 5 *Gray (Mass.)* 103; *Crum* v. *Sawyer,* 132 *Ill.* 443; 24 *N. E. Rep.* 956; *Chicago Union Traction Co.* v. *O'Connell,* 224 *Ill.* 428; 79 *N. E. Rep.* 622; *Murphy* v. *City of New York,* 190 *N. Y.* 413; 83 *N. E. Rep.* 39. While if the particular recitals precede the general words, the release will be restricted to the matters particularly recited. *Jackson* v. *Stackhouse,* 1 *Cowen* 122; *Woodruff* v. *Morristown Institution for Savings,* 7 *Stew. Eq.* 174; *Thorpe* v. *Thorpe,* 1 *Ld. Raym.* 235; 91 *Eng. Reprint* 1054; *Hoes* v. *Van Hoesen,* 1 *Barb. Ch.* 379, 398.

This distinction, however, should not be observed too rigidly, but, in our opinion, should be regarded rather as an aid to interpretation than as the basis of a canon of construction. In other words, while the position of particular recitals may play an important part in aiding an ascertainment of the intent of the releasor, it should not avail to defeat that intent, as for example, if the general words were followed by a recital indicating unmistakably an intent to limit the scope of the release. We know of no better statement of the rule as to the effect of particular words than that by Chief Justice Shaw in *Rich* v. *Lord,* 18 *Pick.* 325. He said:

"It is now a general rule in construing releases, especially where the same instrument is to be executed by various per-

sons, standing in various relations and having various kinds
of claims and demands against the releasee, that general words,
although the most broad and comprehensive, are to be limited
to particular demands, where it manifestly appears, by the
consideration, by the recital, by the nature and circumstances
of the several demands to one or more of which it is proposed
to apply the release, that it was so intended to be limited by
the parties. And for the purpose of ascertaining that intent,
every part of the instrument is to be considered, as where gen-
eral words of release are immediately connected with a proviso
restraining their operation."

In that case there were "various persons having various
claims and demands;" but the rule is a sound one and not
confined to the class of cases represented by Rich *v.* Lord. A
leading English case is *Payler* v. *Homersham* (1815), 4 *M.
& S.* 423; 105 *Eng. Reprint* 890; 22 *E. R. C.* 904, where, as
in Rich *v.* Lord, the release was signed by various creditors in
consideration of a composition for seventy-five per cent. of
their claims. A schedule of these claims was annexed, and it
was held that the general words of the release did not bar a
claim on a bond by the debtor and others not mentioned in
the schedule. A case exactly similar on the facts was *Averill*
v. *Lyman,* 18 *Pick.* 346, decided at the same term as Rich *v.*
Lord.

*Simons* v. *Johnson,* 3 *B. & Ad.* 175, is almost a prototype
of the case at bar. Cross actions were pending between the
parties, and there was a settlement and a release reciting the
terms of such settlement to be that Johnson should pay Si-
mons a sum of money, and each should release to the other all
actions, causes of action and claims brought by him, or which
he had against the other. To carry out this settlement, the
release proceeded in general words to release all actions, &c.,
whatever. The release was held restricted to actions then
commenced and between those parties alone, and not appli-
cable to an action including a third person as party.

Another pertinent case is *Lyman* v. *Clark,* 9 *Mass.* 235, in
which a general release given to an executor in consideration
of payment of certain particular moneys, part of the estate,

was held not a bar to suit for a legacy to which the party in interest was entitled irrespective of the above payment.

Even if the proposition be sound that general words in a release must be preceded by the particular recitals in order to be restricted by them—a proposition to which in its full force we must reserve our assent—we think the release in the present case must be regarded as a restricted one; for by its preamble we are advised that litigation has been in progress and is to be settled and that a compromise agreement has been executed, and that the release is made to carry out that agreement and in accordance with it. The agreement being thus specifically described, by date and names of parties and general subject-matter, and recited as the basis of the release, is necessarily to be referred to as indicating its scope; and the two instruments must be construed together. *Ownes* v. *Ownes,* 8 *C. E. Gr.* 60.

Referring to this agreement, we find that Evert Van Slyke was, by the third paragraph:

"To release to Adelaide Plume Van Slyke and Lewis H. Allen, as executors of the estate of Evert Sheldon Van Slyke, any interest which he may have individually under the will of Evert Sheldon Van Slyke to the assets now in the hands of the said executors of the estate of Evert Sheldon Van Slyke, and the moneys contemplated to be received by the said executors under this agreement."

And that in the catalogue of the various instruments to be executed in furtherance of the agreement, which catalogue is contained in the sixth clause, appears:

"(d) A release, duly acknowledged by Evert Van Slyke to Adelaide Plume Van Slyke and Lewis H. Allen, executors of the estate of Evert Sheldon Van Slyke, of all interest in and to the estate of Evert Sheldon Van Slyke as to any assets now in hand or to be received under this agreement."

In the light of the compromise agreement, and especially of the clause just quoted, and of the preamble to the release, the conclusion is inevitable that the release must be regarded as restricted to claims of Evert Van Slyke intended to be disposed of by the agreement, of which claims the note sued on

was not one. This conclusion is, to say the least, not weakened by the particular clauses following the general words of release, nor by the fact that the release is not under seal, though a seal is recited. Our conclusion is that the paper in question, set up as a general release, was ineffectual to bar the claim on the note, and that in consequence the trial judge erred in directing a verdict for defendant.

The judgment of the Supreme Court will be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON, JJ. 12.