[S. F. No. 7240. Department One.—January 20, 1916.]

In the Matter of the Estate of JOEL PARKER WHITNEY, Deceased. JOHN LANDERS et al., as Executors, etc., Appellants, v. LUCY A. WHITNEY, Respondent.

ESTATE OF DECEASED PERSON—FAMILY ALLOWANCE TO WIDOW—INSTRU-
    MENT EXECUTED BY WIFE COTEMPORANEOUS WITH HUSBAND'S WILL
    —CONSTRUCTION.—A written instrument, executed by a wife at the
    request of her husband at the time he executed his will and annexed
    to it, wherein she declared that she understood that such will dis-
    posed not only of all the individual property of the husband, but
    also of all their community property, that she elected to accept
    and acquiesce in the provisions of the will, and "waived all claims
    to her share of the community property and any and all other
    claims that she might have upon any of the estate disposed of by
    the said will," should be construed in connection with the preamble
    of the will, wherein the testator declared that it was his intention
    thereby to dispose of all of his own property, and also, with his
    wife's "written consent and acceptance," of all of their community
    property, and in further connection with the attestation clause, in
    which the witnesses certified that the wife declared that she exe-
    cuted the instrument "in token of her assent to the will of her
    husband and her waiver of all rights inconsistent with said will."
    So construed, the instrument does not have the effect, either as a
    contract or by way of waiver or estoppel, to deprive the wife of the
    right to a family allowance from the estate of her husband.

ID.—LAW FAVORS WIDOW'S CLAIM TO FAMILY ALLOWANCE.—The widow's
    claim to a family allowance is strongly favored in our law, and her

right thereto should not be held to have been surrendered by an agreement between the spouses, except by clear and explicit language.

ID.—ELECTION BETWEEN WILL AND FAMILY ALLOWANCE.—A widow is not put to an election between the provisions made for her by the will and her right to a family allowance, where the will, although it plainly shows that the testator intended to require her to elect between taking under the will and taking one-half of the community property, contains nothing to indicate an intention to put her to an election so far as family allowance is concerned.

ID.—LEGACY BY WAY OF PERIODIC PAYMENTS TO WIDOW—ENTIRE ESTATE SPECIFICALLY DISPOSED OF.—The fact that the legacy to the wife takes the form of a provision for payments at stated periods, beginning from the testator's death, does not deprive her of the right to a family allowance, nor does the further fact that the will disposes specifically of the entire estate have that effect, in and of itself.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a family allowance from the estate of a deceased person. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Corbet & Selby, for Appellants.

Cushing & Cushing, and Erwin E. Richter, for Respondent.

W. T. Plunkett, and Jas. P. Sweeney, for Various Legatees.

SLOSS, J.—The executors of the will of Joel Parker Whitney, deceased, appeal from an order granting to the widow of the decedent a family allowance of one thousand two hundred dollars per month during the administration of the estate, the payments to date from the day of the decedent's death.

Joel Parker Whitney died on the seventeenth day of January, 1913. The will was admitted to probate and the appellants were appointed executors thereof on the twenty-eighth day of March, 1913. An inventory and appraisement, showing the value of the estate to be $847,821.15, were returned on the thirteenth day of June, 1914. The widow's petition for family allowance was filed on June 10, 1914.

The surviving heirs of the decedent were his widow, the respondent herein, and three adult children, Parker Whitney, Vincent Whitney, and Helen Beryl Wheeler.

The testator owned certain dwelling-houses and fishing-camps in the state of Maine. A large amount of property in this state, originally owned by him, he had conveyed to a corporation known as the Whitney Estate Company, and the bulk of his estate consists of the shares of stock in this corporation. Included in the property of the Whitney Estate Company was a ranch in Placer County.

By the will the decedent gave to his widow the property in Maine, together with his books, silverware, pictures, furniture, and other articles of personal use. Certain minor legacies were given to various persons named, and the residue of the estate, including all of the testator's shares of stock in the Whitney Estate Company, was given to the executors as trustees. The executors thus named were Vincent Whitney, the testator's son, William J. Downing, and Frank Miller. The trustees were directed to pay to the widow one thousand two hundred dollars per month during her life. These payments had been made to, and accepted by, her up to the time of the proceedings here under review. The widow was given the right to occupy the houses on the ranch in Placer County, and the personal articles in such houses were bequeathed to her. The *corpus* of the trust estate was to be kept intact until the testator's son Vincent should reach the age of thirty-five years (or until his death if he should die before reaching such age). During this period each of the three children was to be paid the sum of three thousand six hundred dollars per year. Upon the arrival of Vincent Whitney at the age of 35 years, the trust fund was to be divided or distributed into three equal parts, all of which were to be subject to the provision for the benefit of the wife. One of these parts was to be transferred to Vincent Whitney, the second to be held in trust for the benefit of Parker Whitney and his issue as provided in the will, and the third to be held in trust for the benefit of his daughter Helen Beryl and her issue as provided. The further details of these trusts and of the provisions made in the event of Vincent's death before reaching the age of 35 years need not here be stated.

The preamble of the will ran as follows: "Be it remembered that I, Joel Parker Whitney, . . . do make this my

last will and testament, hereby intending to dispose of all of my property of whatever kind or description, whether now or hereafter acquired, and intending hereby, with the written consent and acceptance of my wife Lucy, to dispose of any community property we may have, in the State of California or elsewhere if any such there be, including her share thereof as well as my own, and hereby revoking all other wills and codicils by me at any time made.'' At the time of the execution of the will the testator's wife, Lucy A. Whitney, signed an instrument which was annexed to the will. This instrument, which the court below finds to have been executed at the request of the decedent, was in the following words:

''I, Lucy A. Whitney, wife of the said Joel Parker Whitney, do hereby certify and declare, that I have read the whole of the foregoing will of my said husband, and fully understand the same, clearly understanding that my said husband by his said will, disposes not only of all his individual property, but also all of our community property, in case there is any such, including my half thereof as well as his own, and I hereby elect to accept and acquiesce in the provisions of the said will, and hereby waive all claims to my share of any community property, and any and all other claims that I may have upon any of the estate disposed of by the said will, being fully convinced in my own mind of the reasonable and proper character of the said will, and the wisdom of its provisions, and hereby accepting such of the said provisions as apply to or concern me.

''Witness my hand and seal at San Francisco, Calif. in the State of California this eighth day of May A. D. 1909.

''LUCY A. WHITNEY. (Seal)''

Attached to this instrument was the following attestation clause, signed by the witnesses to the execution of the will: ''On this eighth day of May, 1909, at San Francisco in the State of California, Lucy A. Whitney, wife of Joel Parker Whitney, executed the foregoing writing in our presence, declaring that she did so freely and voluntarily in token of her assent to the will of her husband and her waiver of all rights inconsistent with said will.''

The testator made two codicils modifying the provisions of his will. The first of these, executed on April 5, 1911, revoked the appointment of W. J. Downing as executor and trustee and substituted John Landers in his place. It also

altered other provisions relative to said Downing. The second codicil, executed on May 15, 1912, designated Parker Whitney as executor and trustee in place of Frank Miller, and made other changes which have no bearing upon the questions here to be discussed. To the second of these codicils there was attached an instrument, executed by the testator's wife, Lucy A. Whitney, which was substantially in the same terms as the writing signed by her at the time of the making of the original will.

It is not questioned that the condition of the estate authorized the making of a family allowance; it is not suggested that the amount allowed to the widow was in any way unreasonable. The main contention of the appellants is that Mrs. Whitney was barred of the right to ask for a family allowance by reason of the writing executed by her at the time of the making of the will.

The soundness of this claim involves an inquiry into the true meaning and intent of the writing. It is of no great consequence whether the instrument be viewed from the standpoint of contract, of waiver, or of estoppel. In any aspect its operative effect, as against the right here claimed by the widow, must depend upon an interpretation of its terms. The important inquiry must be whether the words of waiver were intended to cover a possible claim for family allowance. In the paper Mrs. Whitney declared that she waived all claims to her share of the community property and any and all other claims that she might have upon any of the estate disposed of by the said will. It may readily be conceded that the general language "any and all other claims," etc., would be sufficient, standing by themselves, to cover a claim for family allowance. But the paper is to be read as a whole, in the light of surrounding circumstances and of the other elements of the transaction of which it formed a part. The paper signed by Mrs. Whitney was attached to the will, and it evidently was the paper referred to in the preamble of the will as "the written consent and acceptance of my wife Lucy." We have no doubt that, as is urged by the appellants themselves, the will and this waiver are to be read together. Such a reading clearly shows what the husband and wife had in mind, and what they were undertaking to deal with in the drafting and execution of the two documents. The will itself begins with the declaration that the testator intends to dis-

pose of all of his property, including any community property which he and his wife may have acquired. The husband could not, of course, without the consent of the wife, make a will which would effectively dispose of her right to succeed to one-half of the community property if she should survive him. He declares, therefore, that it is his intent, with her "written consent and acceptance," to dispose of her share of the community property as well as his own. The purpose of the writing which the wife was to sign, and which she did in fact sign, is here clearly declared. That purpose was to enable the husband to exercise a right of disposition over the whole of the community property. The same view of the purpose and scope of the documents is disclosed by the recitals in the paper signed by Mrs. Whitney. After stating that she has read the will and fully understands it, she recites her clear understanding that her husband by his will "disposes not only of all his individual property, but also all of our community property, in case there is any such, including my half thereof as well as his own." After making these recitals the wife goes on to state that she elects to accept and acquiesce in the provisions of the will and that she waives certain rights, as above set forth. As bearing on the intent of the parties, attention may also be directed to the attestation clause, in which the witnesses certify that Mrs. Whitney declared that she executed the writing "in token of her assent to the will of her husband and her waiver of all rights inconsistent with said will."

The widow's claim to a family allowance is strongly favored in our law. (*In re Lux*, 100 Cal. 593, 603, [35 Pac. 341]; *Estate of Welch*, 106 Cal. 427, 432, [39 Pac. 805]; *Estate of Cowell*, 164 Cal. 636, 642, [130 Pac. 209].) The right of testamentary disposition, and the right of beneficiaries to take under the will, are alike statutory, and are both subject to the power of the court having jurisdiction of the estate to make a provision for the support of the widow (or minor children) out of the estate. (*Estate of Bump*, 152 Cal. 274, [92 Pac. 643].) A family allowance is, in this respect, analogous to a probate homestead, which, as has been held, may be ordered even out of property specifically devised. (*Estate of Huelsman*, 127 Cal. 275, [59 Pac. 776]; *Estate of Gray*, 159 Cal. 159, [112 Pac. 890].) A will may, of course, be so drawn as to put the widow to her election between taking the

benefits given her by the testator and claiming her right of family allowance. So, too, the wife may, by agreement, surrender the privilege of applying for an allowance. Whether the right to demand an allowance is inconsistent with the will, or has been surrendered, is a question of interpretation of the will or the contract. In the case of a contract, we think the right should not be held to have been surrendered by an agreement between the spouses "except by clear and explicit language." This was the rule of construction applied by this court to an antenuptial agreement which, as was claimed, barred the wife's right to select a homestead out of the separate property of the husband while both spouses were living. (*Warner* v. *Warner*, 144 Cal. 615, [78 Pac. 24].) In reason, the same principle should apply to the matter under consideration in this case.

Here, then, we see that the parties executed writings in which they declared plainly that they were making arrangements and stipulations for the purpose of enabling the husband to dispose of the entire community property and of binding the wife to assent to such disposition. The husband was asserting his intention to devise and bequeath the half of the community property which would pass to his wife if she survived him. She was consenting to such disposition and waiving her right to object thereto, or, as was said by the attestation clause, she was waiving her rights "inconsistent with said will." The language used should be interpreted in view of this general purpose and intent, and should not be held to surrender other and different rights unless language clearly and expressly declaring such intent was used. Under all the circumstances, we think the general language, "any and all other claims, etc.," should be construed in the light of the apparent purpose of the agreement and limited to the particular words which preceded. In *Mahaffy* v. *Mahaffy*, 63 Iowa, 55, [18 N. W. 685], an antenuptial contract had been made, the prospective husband agreeing that a certain sum should be paid to his wife in case she survived him, "the same to be her dower and portion in full of my said estate, and in lieu and stead of any dower or rights of inheritance therein, given or created by operation of law." The wife, in consideration of the payment, agreed and bound herself "to receive and accept the said sum in full payment, and in entire and complete satisfaction of all my rights of dower

and inheritance as the widow and heir of the party of the first part in his said estate, both real and personal, and I hereby now renounce, and relinquish all claim, right, title and interest therein by reason of the said relation of wife or widow of the said Mahaffy." Upon the death of the husband the right of the wife to continue in possession of the homestead was opposed by reason of the words of renunciation and relinquishment above quoted. The court, in denying the validity of this claim, said: "The clause in question ought, we think, to be construed with reference to the clauses which precede it, and the sense in which the words are used is also to be determined very largely by these preceding clauses. The language used in that portion of the contract which contains the covenant of William Mahaffy shows unmistakably, we think, that the benefit or advantage for which he was contracting was the relinquishment by defendant of the right to take any interest in his estate by inheritance, and the sum of money which he agreed should be paid her out of his estate was to be paid solely as consideration for such relinquishment by her. There is nothing in the language of this covenant, nor in her agreement to accept the money in satisfaction of her right of dower or inheritance, which by any possible construction can be made to cover or include any other right or interests in the estate, except the one named in express terms by each of the parties. The parties, then, by unmistakable language, indicated the subject matter of their contract. They have identified the particular right or interest in the estate, which was the subject of their agreement. And this is followed by the general terms of the clause in question. The general language of this clause must be held to relate to rights and interests of the same nature and description with those that have been already mentioned. The clause is in the nature of a 'sweeping clause,' and its use and object was to guard against accidental omissions; and the rule of construction in such cases is that the 'general words are restrained by the subject matter.' " The language just quoted may very fitly be applied to the question before us. The rule that general words are to be qualified by particular recitals has often been declared, particularly in cases of releases. (*Texas & P. R. Co.* v. *Dashiell,* 198 U. S. 523, [49 L. Ed. 1150, 25 Sup. Ct. Rep. 737] ; *Union Pac. R. Co.* v. *Artist,* 60 Fed. 365, [23 L. R. A. 581, 9 C. C. A. 14] ; *Bassett*

v. *Lawrence,* 193 Ill. 494, [61 N. E. 1098]; *Van Slyke* v. *Van Slyke,* 80 N. J. L. 382, [Ann. Cas. 1912A, 498, 31 L. R. A. (N. S.) 778, 78 Atl. 179].) The same theory underlies the provision of our Civil Code (section 1648), that "however broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."

There is nothing in the various decisions of this court cited by the appellants which is in conflict with the views we have expressed. In *In re Noah,* 73 Cal. 583, [2 Am. St. Rep. 829, 15 Pac. 287], the denial of the widow's right to a family allowance was really based upon the ground that she "did not constitute the immediate family of the deceased." This was also the basis of the decision in *Wickersham* v. *Comerford,* 96 Cal. 433, [31 Pac. 358], where the wife had obtained an order setting apart a homestead to her. The fact that the wife was not a member of the family of the husband at the time of his death was one of the grounds, though not, it is true, the only ground, of the decision in *Estate of Yoell,* 164 Cal. 540, [129 Pac. 999], a case strongly relied upon by the appellants. But if we go beyond this and look to the language of the agreement made by the wife in these various cases, we find that in each instance the words were such as to clearly import an intention to surrender the very right which was afterward claimed. In the Noah case the spouses had made a separation agreement by which the wife, in consideration of the payment of ten thousand five hundred dollars by the husband, agreed not to demand any alimony or support from him and that the ten thousand five hundred dollars should be in full satisfaction of "all her marital claims." In *Wickersham* v. *Comerford,* 96 Cal. 433, [31 Pac. 358], there was a separation agreement by which the wife agreed that she relinquished all right to the separate property of the husband "as his wife in law or equity or by descent." In the Yoell case, *supra,* the agreement (also made in view of a contemplated separation), declared that the execution and consummation of the agreement was intended to be a full, complete, and final adjustment of all the property rights of the parties, who agreed that neither would at any time "assert any right, interest or title as heir at law of the other to any property devised or bequeathed by such will or as against the estate of the other, should the other die intestate and all claim as such

heir or as surviving husband and wife respectively and all right to contest or oppose the last will of the other is hereby expressly waived.'' In the case before us there was no such explicit language. There was no specific reference to "marital rights,'' or to "or right as wife in law or equity or by descent,'' or to "all claim as heir or as surviving wife.'' Besides, in each of these cases the court was construing a separation agreement, the very purpose of which was to make a final and complete adjustment of the mutual relations and rights of the parties with reference to property. The language of the agreement might very properly be construed, in case of doubt, in a way which would tend to carry out this purpose. Here, however, we have a case of a man and woman living together as husband and wife until the death of the former. The scope and purpose of their contract (if the papers in question are to be viewed as a contract) was entirely different from that of a separation agreement.

A case of different character from those just discussed is *Estate of Lufkin,* 131 Cal. 291, [63 Pac. 469]), relied on by the appellants. Here there was no agreement by the husband and wife, the sole question being whether a bequest to the wife was so made that its acceptance would preclude an application for a family allowance. By the provision in question the testator gave to his wife the sum of one thousand dollars, "on the payment of which $1000 she relinquish all further claim to my estate.'' It was held that the term "claim'' was broad enough to include the right of the widow to an allowance from the estate of the testator, and that it, *"where a different intention is not manifested by the context,"* must be so construed. The intention to use it as including such claim was held by the court to be manifest from the circumstances of the case, it appearing that there was nothing but the claim for family allowance to which the term could be made to apply. The decision supports the conclusion (conceded in the earlier part of this opinion) that the words "any and all other claims,'' etc., contained in the writing signed by Mrs. Whitney, would, standing alone, cover a claim for family allowance. But the inquiry must go further than this. We are to decide, not the independent meaning of these words, but their meaning in the connection in which they are found, and under the circumstances surrounding their use. In *Estate of Lufkin* it was held that the surrounding circum-

stances indicated that the word "claim" was used in such manner as to include a claim for family allowance. Here, for the reasons which we have already elaborated, we conclude that the word was not used in this sense.

The appellants refer to a number of decisions from other states which, as they claim, support their contention that the widow by her writing barred herself of the right of a family allowance. (*Appeal of Cowles,* 74 Conn. 24, [49 Atl. 195]; *Paine* v. *Hollister,* 139 Mass. 144, [29 N. E. 541]; *Pavlicek* v. *Roessler,* 222 Ill. 83, [78 N. E. 11]; *Rieger* v. *Schaible,* 81 Neb. 33, [16 Ann. Cas. 700, 17 L. R. A. (N. S.) 866, 115 N. W. 560]; *Kroell* v. *Kroell,* 219 Ill. 105, [4 Ann. Cas. 801, 76 N. E. 63]; *Appeal of Staub,* 66 Conn. 127, [33 Atl. 615].) We shall not undertake to review these cases at length. One and all, they dealt with antenuptial agreements, and in each instance the language which was held to bar the right of the widow differed from that found in the paper signed by Mrs. Whitney. As this court has had occasion to say repeatedly, decisions on the interpretation of written instruments have but limited value when applied to the construction of documents embodying different language. To a great extent each writing must be viewed by itself, and the intent of the parties must be ascertained from a study of the particular terms employed, read in the light of the underlying purpose of the transaction and the circumstances under which it was made. So reading the paper before us, we do not find in the authorities cited any reason to adopt an interpretation other than the one given by the court below.

There is no occasion to consider at length the claim that by accepting the benefit given her by the will, the widow has made an election to claim no family allowance or that she is thereby estopped to claim such allowance. These contentions rest upon the premise that the receipt of an allowance is inconsistent with the provisions made for the wife in the will. There is no such inconsistency. To put the widow to her election, "it must clearly and unequivocally appear that the provision made by the will was intended to be in lieu of such rights as are given by the law." (*Estate of Cowell,* 164 Cal. 636, 642, [130 Pac. 209].) The will shows plainly that the testator intended to require the widow to elect between taking under the will and taking one-half of the community property, but there is nothing to indicate an intention to put her

to an election so far as family allowance is concerned.  The fact that the legacy to the wife takes the form of a provision for payments at stated periods, beginning from the testator's death, does not deprive her of the right to a family allowance. In this respect the case is precisely similar to *Estate of Cowell.* We see no force in the claim that the granting of a family allowance would operate to defeat the will.  Assuming, as claimed by the appellants, that the will disposes specifically of the entire estate, this does not, in and of itself, destroy the right to claim an allowance.  Such right stands on the same footing as her right to a homestead which, as we have seen, may be set apart by the probate court out of property specifically devised.  There is, therefore, no room for the application of the doctrine of election or that of estoppel.

The order is affirmed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.