**BUCK v. McLAUGHLIN.**
No. 6244.

Circuit Court of Appeals, Ninth Circuit.
March 9, 1931.

Norman A. Eisner, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

O. K. Cushing, Charles S. Cushing, Sidney M. Ehrman, and Erwin E. Richter, all of San Francisco, Cal., and Warren Olney, Jr., J. M. Mannon, Jr., A. Crawford Greene, and John W. Parker, all of San Francisco, Cal., amici curiæ.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

Mary Buck, the appellant, is the widow of John A. Buck, who died April 6, 1923. By an order of the superior court of the state of California in and for the city and county of San Francisco, in probate, she was given a family allowance of $7,500 a month to date from the time of death. Between that date and December 6, 1923, she received $60,-000 from the estate by way of family allowance. She returned this amount as part of her income for the year 1923 in reporting to the federal authorities. She paid a total tax on her income of $10,271.41. Without the $60,000 so returned by the appellant as part of her income the tax would have been only $508.01. She brought this action to recover the difference, $9,763.48. Her contention is that the widow's allowance paid pursuant to an order of the superior court is not subject to tax as income.

The money paid by the estate to the widow as a family allowance is quite distinct from her rights, if any, in and to the corpus or income of the estate. It is awarded to her by reason of her widowhood for her support during the administration of the estate and she is entitled to the same regardless of whether or not she has any right in and to the corpus of the estate or its income. Her right to the family allowance is purely statutory. Estate of Dargie, 162 Cal. 51, 121 P. 320. Under the law of California all the property of the decedent, whether income or corpus of the estate, is liable for the payment of family allowance. Code Civ. Proc. Cal. §§ 1452, 1453, 1464, 1466, 1467, 1516, 1646; Estate of Treat, 162 Cal. 250, 121 P. 1003; Estate of Whitney, 171 Cal. 750, 154 P. 855.

The question presented to us is whether or not this payment so made to her is income within the meaning of that term as used in the laws of the United States imposing taxes upon income.

The Sixteenth Amendment to the Constitution of the United States authorizes Congress to impose "taxes on incomes, from whatever source derived, without apportionment among the several states," etc. Congress, in 1921, enacted legislation in pursuance of which the tax here involved was imposed. This legislation contains an elaborate definition of gross income and includes therein almost the exact language of the Constitution, " * * * gains or profits and income derived from any source whatever."

Section 213 of the Revenue Act of 1921, 42 Stat. 237. This language was continued in the Revenue Act of 1924, 43 Stat. 267, § 213, and Act Feb. 26, 1925, 43 Stat. 997, § 12 (26 USCA § 954); Revenue Act 1926, 44 Stat. 23, § 213 (26 USCA § 954), and was also included in the earlier revenue acts beginning immediately after the adoption of Amendment 16. Act Oct. 3, 1913, 38 Stat. 114, 166; Revenue Act 1916, 39 Stat. 757, § 2(a); Act Oct. 3, 1917, 40 Stat. 329, § 1200; Revenue Act 1918, 40 Stat. 1065, § 213.

The Supreme Court, in Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211, held that alimony paid to a divorced wife under a decree of court was not income within the meaning of the Act of Oct. 3, 1913 (38 Stat. 114, 166, § 2A, subd. 1, and B). We quote from that decision as follows:

"The use of 'the word itself in the definition of 'income' causes some obscurity, but we are unable to assert that alimony paid to a divorced wife under a decree of court falls fairly within any of the terms employed.

"In Audubon v. Shufeldt, 181 U. S. 575, 577, 578, 21 S. Ct. 735, 736, 45 L. Ed. 1009, we said: 'Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on a contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction. * * * Permanent alimony is regarded rather as a portion of the husband's estate to which the wife is equitably entitled, than as strictly a debt; alimony from time to time may be regarded as a portion of his current income or earnings. * * *'

"The net income of the divorced husband subject to taxation was not decreased by payment of alimony under the court's order; and, on the other hand, the sum received by the wife on account thereof cannot be regarded as income arising or accruing to her within the enactment."

We are unable to distinguish the case at bar in principle from the situation in Gould v. Gould, supra. A family allowance to the widow from the assets of her husband for her support, pending the administration of his estate after the dissolution of the marital community by the death of the husband, is not dissimilar in principle from alimony allowed to her from his estate or earnings after the dissolution of the marital community by divorce. We will not further pursue the obvious analogies. Later decisions by the Supreme Court dealing with the power of Congress under the Sixteenth Amendment to the Constitution have clarified the meaning of "income" as used therein and in the laws enacted in pursuance thereof. In the case of Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570, the Supreme Court dealt with the power of Congress to tax a stock dividend under the Sixteenth Amendment. The court there said:

"After examining dictionaries in common use (Bouv. Law Dict. [Vol. 2, page 1527]; Standard Dict.; Webster's Internat. Dict.; Century Dict.), we find little to add to the succinct definition adopted in two cases arising under the Corporation Tax Act of 1909 (Stratton's Independence v. Howbert, 231 U. S. 399, 415, 34 S. Ct. 136, 140, 58 L. Ed. 285; Doyle v. Mitchell Bros. Co., 247 U. S. 179, 185, 38 S. Ct. 467, 469 (62 L. Ed. 1054), 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets, to which it was applied in the Doyle Case, 247 U. S. 183, 185, 38 S. Ct. 467, 469, 62 L. Ed. 1054.

"Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain,' which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. 'Derived—from—capital'; 'the gain—derived—from—capital,' etc. Here we have the essential matter: not a gain accruing to capital; not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however invested or employed, and coming in, being 'derived'—that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal—that is income derived from property. Nothing else answers the description.

"The same fundamental conception is clearly set forth in the Sixteenth Amendment—'incomes, from whatever source derived'—the essential thought being expressed with a conciseness and lucidity entirely in harmony with the form and style of the Constitution."

See, also, Merchants' Loan, etc., Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305; Goodrich v.

Edwards, 255 U. S. 527, 535, 41 S. Ct. 390, 65 L. Ed. 758.

Under these decisions it is clear, we think, that the payment to the widow is not income within the meaning of that term as used in the Constitution and in the laws of Congress, as interpreted by our Supreme Court.

On the former hearing of this case the district attorney claimed that the family allowance was taxable under section 213(a) of the Revenue Act of 1921. The proposition was stated in the brief of the government as follows: "On the other hand, on what law does appellant rely as a basis for claiming a deduction? The provisions of Section 213 (a) quoted above at page 3 are intended to cover all income received by the individual taxpayer 'of all kinds and from whatever source derived,' unless a specific exception is provided. In other words, unless a taxpayer can point to the provision in the statute which excepts a particular kind of income, then the income is taxable." While the appellant stated her view as follows: "The test of whether it [the family allowance] is or is not income to the widow is whether or not the distribution was of income or corpus."

The district attorney, it should be stated, does not on this rehearing now claim that the family allowance as such is income, and therefore, in effect, acquiesces in the foregoing statement as to the effect of the above-cited decisions of the Supreme Court, but claims that in the case at bar the family allowance was actually paid from the income of the estate, and that the appellant, as an executrix of the estate, for that reason deducted the amount of the family allowance paid to her as widow from the amount of the taxable income of the estate; and in pursuance of the same theory made the return of the amount of the family allowance so paid to her from the income of the estate as her income taxable to her, and paid the tax levied thereon in accordance with her individual return. Thus, it is pointed out, if she now recovers herein on the tax so paid, income of the estate to the extent of $60,000 will have escaped taxation, and that as the statute of limitations will now prevent a reassessment of the income tax due from the estate, the government will lose the amount of the tax properly payable thereon, and that this loss will be a direct result of the manner in which the appellant acted in her dual capacity of coexecutrix and widow. The appellant waited four years to file her claim for a refund of this tax with the Commissioner, and did so on the last day for filing the claim, which was also the last day for the reassessment of the income tax of the estate (March 15, 1928). See section 250(d), Revenue Act 1921 (42 Stat. 265); sections 3226, 3228, Rev. St., as amended by sections 1316, 1318, Revenue Act 1921 (26 USCA §§ 156, 157). If the test as to the taxability of the family allowance was that suggested by the appellant, namely, as to whether or not the distribution or payment to her was from the income of the estate, it might well be held that the admission of the appellant, resulting from the return of the income of the estate to the Commissioner for the purpose of fixing the tax thereon would be a sufficient evidence that the widow's allowance was actually paid from the income of the estate, to sustain the decision of the trial court; but we do not agree with this contention. It should be added also that appellant claims that the taxability of the family allowance cannot be based upon the fortuitous circumstance as to the actual application of income or corpus of the estate to the payment of the family allowance, but rather upon the laws of the state of California which make the family allowance payable from the corpus of the estate, and upon the provision of the Revenue Act of 1921, § 403 (42 Stat. 279), which allows a deduction from the corpus of the estate of the amount paid for family allowance for the purpose of determining the net amount of the estate subject to the estate tax, and upon the decisions of the Board of Tax Appeals that the family allowance is not properly deductible from the income of the estate in fixing the amount thereof subject to taxation. Estate of W. S. Taylor, 9 B. T. A. 255; Estate of Ames, 14 B. T. A. 1067.

Upon the issue thus presented by the parties we adhere to the views expressed in our former opinion, as follows:

"We think it quite immaterial in determining the taxability of the amount received by the widow as to whether it comes from the corpus or income in the hands of the executors. * * * As a reason for her position that the money received by her as family allowance is not income, appellant contends that the executors are not entitled to deduct from the income of the estate taxable under provisions of section 219 (a), 42 Stat. 246, any payments made to the widow as family allowance. Subdivision (c) of this section (section 219) provides that in determining the income of estates during the period of administration there shall be deducted any income properly paid or accredited to any legatee, heir or other beneficiary, but appellant contends that this exception is not broad enough to cover the payment made to the

widow as a family allowance and claims that as it cannot be deducted from the income for which the estate is taxable, it cannot be properly taxed as income in the hands of the widow.

"In support of appellant's contention that the deduction made to the estate is not a proper one, a decision by the Board of Tax Appeals is cited (Estate of Tyler, 9 B. T. A. 255). Also, Charles Lesley Ames, Executor of the Will of Charles W. Ames, B. T. A. Dec. 4730, 14 B. T. A. 1067. The Government, however, contends to the contrary that in estimating the income of the estate for taxation purposes the executors were entitled to a deduction of the amount paid the widow as a family allowance under section 219 (c), and it is stipulated herein that the estate was in fact allowed a deduction of $60,000 paid to the widow in arriving at the net income for purposes of taxation.

"We do not think it necessary in this case to determine whether or not the executors of an estate having paid a family allowance from the income thereof are entitled to have the same credited against their gross income in determining the net income for the purpose of taxation. That question does not arise in this case."

The judgment in favor of the government must be reversed upon the authority of the above-cited decisions of our Supreme Court called to our attention in this case for the first time by the petitions for a rehearing.

Judgment reversed.