## Murphy Estate

344

*John M. Reed* and *C. H. Bonner,* for Mary V. Murphy, legatee, and Mary E. Geist, executrix.

RAHAUSER, J., August 2, 1954.—John Edwin Murphy died December 10, 1946. His last will and testament was probated in the Register of Wills Office of Allegheny County, Pa., and letters testamentary were issued January 20, 1947, to his sister Mary E. Geist, of Cambridge, Mass.

Decedent was survived by his wife, Sally J. Murphy, and one minor daughter; Patricia Murphy, a sister; the executrix, Mary E. Geist, and his mother, Mary V. Murphy.

The facts pertaining to the life of decedent and his widow are well summed up by the court of California at the term and number herein referred to as follows:

"The facts show that the assured, Mr. Murphy, during his boyhood life, lived with his mother in Pennsylvania. He secured an appointment to the United States Naval Academy at Annapolis in 1918, graduated in 1922, and was first assigned to duty in New England, thence to San Pedro, California, in 1925 or 1926, and was an officer on the U.S.S. Oklahoma. While at San Pedro he met plaintiff (Sally J. Murphy). She was then living in an apartment in that city. She had been keeping company with Murphy about a year

before their marriage, and according to her testimony she and her husband discussed where they would have their permanent home and had 'that decided before we were even married'; that during that year they went to Point Fermin, near San Pedro, and they decided some day they would have their home in that very spot; that they discussed building it then and renting it and 'have it pay for itself.' and they would have it when he finally retired or was sooner discharged from the Navy; that they, at that time also discussed buying property in San Diego County; that in 1935 they looked at a house there but that the sale was not consummated; that again in 1944 they decided to build in Coronado and that in 1945 they bought a lot for that purpose and endeavored to secure a loan from a bank in Coronado; (the banker corroborated this testimony), that they also contemplated the purchase of a farm in Wildomar, California, because he soon would be able to retire on three fourths pay. Pictures and plans of the house were found in Mr. Murphy's personal effects at the time of his accidental death.

"Plaintiff exhibited plans of a house and garage apartment drawn in 1945 which were selected by Mr. Murphy for the Coronado lot. Murphy had registered to vote in California in 1935, 1936, 1937 and 1938, and in 1940 his registration was canceled, due to the fact that he failed to vote that year. He had never registered to vote in any other state during their married life. In 1937, he claimed a veteran's exemption from taxes in San Diego County on an affidavit that he had been a resident of that county since 1936.

"While in San Diego, on September 29, 1936, he executed a will in which he declared himself a resident of San Diego County, California. The evidence shows that, as to plaintiff, she was and had been a resident

of California up to the time of her marriage on November 28, 1926, and at all times looked upon California as her place of domicile and the place to which she intended to return; even though she followed her husband about in the course of his naval service, she maintained her apartment in San Pedro from six to nine months after her marriage. Her husband was ordered to Florida for duty for six or eight months. He told her to remain in California. He then wired her to meet him in Pittsburgh, Pennsylvania, because he had been ordered to Panama. They visited with Murphy's mother in Wilkinsburg, Pennsylvania, for about a week. Thereafter they went to New York for three or four months. Murphy then went to Panama and plaintiff followed him there, they stayed there for about nine months and thence went to Boston, Massachusetts, for two or three months. He was ordered to the Naval Academy for postgraduate work and plaintiff followed him there, where they lived for one and one-half years. He then traveled all over the east coast and then went to Columbia University in New York for one full term. They lived there. Their daughter, Patricia was born there, Murphy put in for duty in California, but was ordered to China. Plaintiff and child went with him and stayed about three and a half years. In 1933 they returned to California. Plaintiff lived there for about three months, her husband went on to Washington, D. C., where she later joined him. In 1935, both came to California and lived in San Diego. Mr. Murphy was in command of a destroyer operating out of that city. It was at that time he registered to vote and claimed a veteran's property tax exemption as a resident of California. In 1938, he was assigned to duty in New York. He and his wife then lived in Drexel Hill, Pennsylvania, and both returned to California in 1944, where plaintiff continually resided thereafter. Mr. Murphy was a command-

ing officer at the training base at Coronado for about one and one-half years. In 1945, he left for further sea duty, and died in an automobile accident while returning to his ship from a conference in Washington, D. C."

On December 16, 1949, the wife, Sally J. Murphy, served notice upon the executrix of her intention to take against the will and filed her election in this county, to take against the will of the deceased husband. On January 3, 1947, she presented a petition to the Superior Court for the State of California, alleging, inter alia, the following:

"That the said John Edwin Murphy left an Estate in the County of San Diego, California, consisting of personal property of the estimated value of $1,500.00 and left cash and securities in the State of New York in the estimated value of $5,000.00, and that the probable value of annual rents, issues and profits of all property belong to said estate.

"That there is no person authorized to care for said property."

Petitioner prayed that she be appointed special administratrix of the estate of John Edwin Murphy.

On January 3, 1947, the California court appointed Sally J. Murphy special administratrix and accordingly special letters of administration were issued to her at number 38099 of the Superior Court of the State of California in and for the County of San Diego.

On January 6, 1947, as special administratrix, Sally J. Murphy presented a petition to the same court praying for a family allowance of $380 per month, which prayer was granted by the court.

Then through their California counsel, Whelan & Whelan, Mary E. Geist, executrix under the will probated in Allegheny County, and Mary V. Murphy filed notice in the family allowance proceedings in California that on June 20, 1947, at 9:30 o'clock they would

move the California court for reduction of the allowance allotted to Sally Murphy. The record shows that the matter was heard and the court, on June 24, 1947, entered an order reducing the family allowance to $100 per month.

The record shows that, the wife, Sally J. Murphy, attempted to probate a 1938 will of decedent. That under the proceeding instituted at the said term and number of court, the Pennsylvania parties, the executrix, the mother, and other beneficiaries under the will probated in Allegheny County, objected to the proceeding of the probate of the 1938 will and were successful in having the court find certain facts and conclusions of law set forth at the aforesaid term and number of the Superior Court of San Diego County, Calif., as follows:

*"Findings of Fact and Conclusions of Law*

"The above-entitled matter comes on regularly for hearing upon the petition of Sally J. Murphy for probate of a document alleged to be the last will and testament of John Edwin Murphy, deceased, dated September 29, 1938, and upon the written contest of Mary E. Geist and Mary V. Murphy to the probate of said alleged last will and testament; upon the written contest of Amy Arton and the answer of Sally J. Murphy to said contest; Sally J. Murphy appearing by her attorneys of record, Amy Arton appearing by her attorneys of record, and Mary V. Murphy and Mary E. Geist appearing by their attorneys of record; trial by jury having been waived by all parties and the Hon. L. N. Turrentine, judge presiding in Dept. Number Two of the above-entitled court; evidence both oral and documentary having been received, and all parties having rested, and the court being fully advised in the premises does render its decision in writing and does determine the issues as hereinafter

more fully set forth and does make and render the following findings of fact:

"I. That the document dated September 29, 1938, and offered for probate by Sally J. Murphy as the last will and testament of John Edwin Murphy was executed and published in all respects as required by law for the execution of a will; but that said document is not the last will and testament of John Edwin Murphy, but has been revoked and annuled by the document bearing date January 23, 1946, which is wholly written, dated and signed in the handwriting of John E. Murphy, and which is the last will and testament of John E. Murphy, deceased.

"II. The said document dated January 23, 1946, wholly written, dated and signed in the handwriting of John E. Murphy has been duly admitted to probate by the Orphans' Court of Allegheny County, Pennsylvania, on January 20, 1947; that said court was then a court which had jurisdiction of the subject matter; and that Sally J. Murphy had submitted herself to the jurisdiction of said court and is estopped to deny its jurisdiction.

"From the foregoing findings of fact the court makes the following

*"Conclusions of Law*

"I. That the instrument offered for probate dated September 29, 1938, is not the Last Will and Testament of John Edwin Murphy, deceased, and is not entitled to probate.

"II. That the last will and testament of John Edwin Murphy, deceased, is holographic writing dated January 3, 1946, which has been admitted to probate under date of January 20, 1947, in the Orphans' Court of Allegheny County, Pennsylvania, and that said court at the time of making its decree admiting said will to probate, and at all times since the commencement had jurisdiction of the subject matter; and that Sally

J. Murphy is estopped to deny the jurisdiction of said court.

"III. That the above entitled proceedings should be dismissed.

"IV. That the contestants to the probate of said document dated September 29, 1938, offered for probate, are entitled to recover their costs."

Objections to the above findings of facts and conclusions of law were filed by Sally J. Murphy on April 27, 1948.

Nevertheless the judge of the Superior Court of California by order dated May 3, 1948, dismissed the proceeding wherein Sally J. Murphy sought to probate the will of 1938 of John Edwin Murphy.

The California court in its decree upheld the probate of the will in Allegheny County and declared that the Orphans' Court of Allegheny County has jurisdiction of the proceeding and further that Sally J. Murphy was estopped to question the jurisdiction of the Allegheny County Orphans' Court.

Also a suit was brought by Sally J. Murphy against the Travelers Insurance Company for her community property rights in a $10,000 insurance contract.

This suit was contested by the mother, Mary V. Murphy, and parties in interest in this estate.

The California court combined all these actions of the widow's exemption, the petition for probate of the 1938 will of John E. Murphy, and audit for the proceeds of the insurance policy into one proceeding, the judgment of which reads as follows:

"IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SAN DIEGO

In the matter of the Estate
of
John Edwin Murphy also known as

John E. Murphy and as J. E. Murphy,
Deceased

No. 38079

*JUDGMENT*

"The above entitled matter came on regularly for trial April 13 and 14, 1948, before the Honorable L. N. Turrentine, judge in Department II of the above-entitled court; and trial by jury having been expressly waived; Martin and Hagedy and Don. P. Fogarty, Esquires, appearing as attorneys for Sally J. Murphy; Eli Levenson, Esquire, appearing as attorney for Amy Arton, and Vincent Whelan, Esquire, appearing as attorney for Mary E. Geist and Mary V. Murphy; the matter having been consolidated for trial with action No. 138678 in the above-entitled court, which action is entitled Sally J. Murphy v. Travelers Insurance Company, a corporation, and Mary V. Murphy; and evidence both oral and documentary having been introduced in support of the petition of Sally J. Murphy for admission to probate of the Last Will and Testament of the above named decedent of a document dated September 29, 1938, and in support of the written contests of Mary E. Geist and Mary V. Murphy and of Amy Arton to the probate of said document, and it appearing to the court from the evidence introduced that on January 20, 1947, the Orphans' Court of Allegheny County, Pennsylvania, admitted to probate as the Last Will and Testament of said decedent a holographic instrument dated January 23, 1946, and that said instrument is the Last Will and Testament of the above named decedent.

"And the court having heretofore rendered and caused to be filed herein its Findings of Fact and Conclusions of Law, now by reason of said Findings of Fact and Conclusions of Law, applicable thereto, dated September 29, 1938, offered for probate as the Last Will and Testament of John Edwin Murphy, also

known as John E. Murphy and as J. E. Murphy, deceased, is not the Last Will and Testament of said decedent; and that a certain holographic instrument dated January 23, 1946, is the Last Will and Testament of John Edwin Murphy also known as John E. Murphy and as J. E. Murphy, deceased, and that said document has heretofore on January 23, 1946, been admitted to probate as such and that said orphans' court then had jurisdiction over the original proceeding for the probate of said will, and that Sally J. Murphy is estopped to question the jurisdiction of said orphans' court over said proceeding; and that no ancillary proceedings are required in the State of California for the probate of said last will; and that the document dated September 29, 1938, presented for probate be denied probate, and this proceeding be and the same hereby is dismissed.

"It Is Further Ordered, Adjudged, And Decreed that contestants of the probate of said document dated September 29, 1938, recover their costs incurred herein the sum of $

"Done in open court this May 3, 1948,

> *"L. N. TURRENTINE*
> JUDGE OF SUPERIOR COURT."

It is apparent as of May 3, 1948, that all parties have submitted to the jurisdiction of the California court and hence the order of $380, later reduced to $100 per month, is binding on all parties.

It appears from the record of account that all the assets in California were consumed under orders of court.

It is clear that all parties interested in the estate were in court when the court authorized the payment of the family exemption.

It follows that this court must respect that disposition of that portion of the estate. The full faith and

credit clause of the Federal Constitution requires this action. The Supreme Court in the Higbee Estate, 372 Pa. 233, 237, said:

"The Court below distinguishes that case by pointing out that the decree of dissolution was vacated because the court which entered it had no jurisdiction over the corporation by reason of defective service, whereas no such finding of fact of jurisdiction has been here made. But it is a fundamental principle that in giving full faith and credit to a decree of a court of a sister state, we are not permitted to examine into the reasons which moved the sister state to rule as it did. The Supreme Court of the United States so held in Miliken v. Meyer, 311 U. S. 457, 462, 61 S. Ct. 339:

" '. . . the full faith and credit clause of the constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based.' Our own cases have long recognized this rule. In Mitchell, Receiver of the Liberty Clay Products Co., 291 Pa. 282, 139 A. 853, Mr. Justice Walling said for the Court (p. 288) : 'Of course, the questions of the Court's jurisdiction and as to payment of the judgment are always open, but they are not contested here, and beyond these questions the courts of another state will not go: (citing cases)'. See also: Rogers v. Burns, 27 Pa. 525; Stilwell v. Smith, 219 Pa. 36, 41, 67 A. 910; Engineers National Bank v. Drew, 311 Pa. 59, 166 A. 376.

"Being thus restricted by the constitutional requirement of giving full faith to the acts of the Illinois Court, we are not at liberty to inquire into the reason or logic of its decree of vacation, but are constrained to enforce it according to its unambigous terms and to treat the earlier dissolution of appellant corporation as 'vacated, set aside and for naught held'. It necessarily follows that the corporation had a de jure

existence on the date of the testatrix's death and is therefore entitled to receive the disputed legacy."

It is likewise apparent that the portion of the estate taken in satisfaction of the order of the California court for family exemption is not deductable from the widow's share to be distributed here. The California court held that their order did not constitute an inheritance but was a separate bounty in addition to the interest passing by intestacy or under the will as stated in Buck v. McLaughlin, 48 F. 2d 135, as follows:

"The money paid by the estate to the widow as a family allowance is quite distinct from her rights, if any, in and to the corpus or income of the estate. It is awarded to her by reason of her widowhood for her support during the administration of the estate and she is entitled to the same regardless of whether or not she has any right in and to the corpus of the estate or its income. Her right to the family allowance is purely statutory: Estate of Dargie, 162 Cal. 51, 121 P. 320. Under the law of California all property of the decedent, whether income or corpus of the estate, is liable for the payment of family allowance: Code Civ. Proc. Cal. §§1452, 1453, 1464, 1466, 1467, 1516, 1646; Estate of Treat, 162 Cal. 250, 121 P. 1003; Estate of Whitney, 171 Cal. 750, 154 P. 855."

The precedent for giving the widow an election to take her exemption in the manner she desires is expressed by Judge Trimble in Keyser's Estate, 36 D. & C. 515, 518:

"There is no doubt at all that the only amount that she can have from a Pennsylvania estate in any circumstances is $500 or its equivalent in value. It does not seem to be reasonable that she can claim in Pennsylvania the sum of $500 when she has already received it from another jurisdiction. We do not believe there is any question of conflict of laws in this case.

We rely on a strict interpretation of the statute of the State of Pennsylvania. It was made for 'her immediate wants.' She obtained $650 from her husband's estate in Ohio for her use and, having accepted that, she forfeited her right to a claim for an exemption in the State of Pennsylvania. If she were a resident of Pennsylvania, her claim should have been presented here: if of Ohio, she had a right to the allowance which she received from property located in that State, but she cannot claim from both jurisdictions unless the amount allowed to her by one State were less than the amount allowed to her in Pennsylvania; then she could claim the deficiency."

The widow claims that she established her rights to community property in the personalty decreed to the executrix by the Surrogate Court of New York.

This court, in order to find from the record that the widow had certain community property rights in the property, would be compelled to invoke the presumptions of the law of the State of California to the effect that all property purchased by the husband during marriage is presumed to be community property. This court does not believe that those presumptions can be applied in this court.

The law of the forum governs the proof in the court of a fact alleged. The law of the forum governs presumptions and inferences to be drawn from the evidence: A. L. I. Restatement of the Law of Conflict of Laws, §595, Proof of Facts.

The burden of proving that the widow had community property rights in the property located in New York was upon her. This court does not believe that she has met the burden.

The legacies to Amy Arton fall as the subject of these legacies was disposed of through the order of the aforementioned court of the State of California.

A decree will therefore be drawn awarding one half of the estate in the hands of the executrix to the widow and one half of the estate to the distributee under the will.